**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 15, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 04-1321

RAMON PEREZ-VARGAS, a/k/a
Ramon Perez, Jr.,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 04-CR-79-B)**

Lynn C. Hartfield, Research and Writing Specialist (Robert W. Pepin, Assistant
Federal Public Defender, and Raymond P. Moore, Federal Public Defender, on the
briefs), Office of the Federal Public Defender, District of Colorado and Wyoming,
Denver, Colorado for Defendant-Appellant.

John M. Hutchins, Assistant United States Attorney (William J. Loene, Acting
United States Attorney, with him on the brief), Office of the United States
Attorney, Denver, Colorado for Plaintiff-Appellee.

Before **SEYMOUR** , **KELLY** , and **TYMKOVICH** , Circuit Judges.

**TYMKOVICH** , Circuit Judge.

Ramon Perez- Vargas challenges the district court's 16-level sentence enhancement of his sentence, which resulted from the court's conclusion that his prior conviction for third degree assault in Colorado was a "crime of violence," as defined by United States Sentencing Guideline (USSG) § 2L1.2. In addition, Perez-Vargas argues the district court violated *United States v. Booker*, 125 S. Ct. 738 (2005), when it mandatorily applied the Guidelines to his sentence. Taking jurisdiction pursuant to 28 U.S.C. § 1291, we reverse the district court's application of the crime of violence enhancement, and remand for re-sentencing.

## I. BACKGROUND

Perez-Vargas pled guilty to one count of unlawful reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). The plea agreement included an admission of the relevant facts surrounding the unlawful reentry. The agreement also set forth Perez-Vargas's criminal history, including two prior convictions in Colorado. One conviction stemmed from a third degree assault, for which he received two years imprisonment; a second conviction resulted from an attempted theft of between $500 and $15,000, for which he received three years imprisonment. The plea agreement contained no other information about these prior convictions.

The plea agreement established Perez-Vargas's criminal history as category VI, the total offense level as either 21 or 13, and the range of sentence as either 77 to 96 months or 33 to 41 months. The variations were the result of the

-2-

disagreement that forms the basis of this appeal, i.e., whether Perez-Vargas's prior convictions should increase the base offense level by 8 or 16 levels.

The base offense level for unlawful reentry is 8. USSG § 2L1.2(a). The government contended a 16-level enhancement applied based on the third degree assault, which the presentence report (PSR) characterized as a violent felony. *See* USSG § 2L1.2(b)(1)(A) (the base offense level is increased 16 levels "[i]f the defendant previously was deported, or unlawfully remained in the United States after—a conviction for a felony that is . . . (ii) a crime of violence"). Perez-Vargas, on the other hand, contended that third degree assault is not necessarily a crime of violence under the Guidelines since some nonviolent conduct could be covered by the broad language of Colorado's third degree assault statute. Thus, he argued that only an 8-level enhancement should apply based on his prior conviction for attempted theft, which Perez-Vargas admitted was an aggravated felony. *See* USSG § 2L1.2(b)(1)(c) (the base offense level is increased by 8 if the defendant had "a [prior] conviction for an aggravated felony").

The district court agreed with the government that third degree assault was a violent crime and enhanced the sentence 16-levels. Ultimately, Perez-Vargas received a 77-month sentence, which was at the low end of the applicable guideline range (77 to 96 months).

## II. ANALYSIS

-3-

We review de novo the district court's interpretation of the Guidelines and its determination that Perez-Vargas's prior conviction for third degree assault in Colorado is a "crime of violence." *See United States v. Venegas-Ornelas*, 348 F.3d 1273, 1274 (10th Cir. 2003); *United States v. Holbert*, 285 F.3d 1257, 1259 (10th Cir. 2002).

### A. Defining "Crime of Violence"

When determining whether a prior conviction is a crime of violence, the Supreme Court has instructed sentencing courts to take "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). In applying *Taylor*, we have held that if "the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute 'to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the [sentencing] court.'" *United States v. Dwyer*, 245 F.3d 1168, 1171 (10th Cir. 2001) (quoting *United States v. Zamora*, 222 F.3d 756, 764 (10th Cir. 2000)).

Recently, in *Shepard v. United States*, 125 S. Ct. 1254 (2005), the Supreme Court added new depth to *Taylor*'s analysis. Unlike the prior convictions in *Taylor*, which followed jury trials, the prior convictions at issue in *Shepard* were the result of guilty pleas. The Court found "*Taylor*'s reasoning controls the

identification of . . . convictions following pleas, as well as convictions on verdicts." *Shepard*, 125 S. Ct. at 1259.  As a consequence, when determining whether a prior conviction resulting from a guilty plea is a violent felony, a court is limited to an examination of the language of the statute of conviction, and, if it is ambiguous, "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . , or to some comparable judicial record of this information." *Id.* at 1262.[1]

According to the Supreme Court, then, we must limit ourselves to (1) an examination of the language of the statute under which Perez-Vargas was convicted, (2) the charging document or court records of comparable reliability, and (3) any admissions (including those within the plea agreement) Perez-Vargas made regarding the facts of his prior convictions.  *See Taylor*, 495 U.S. at 600; *Shepard* 125 S. Ct. at 1262.

In this appeal, the record before us does not contain any charging documents describing the underlying assault, nor any admission by Perez-Vargas.

---

[1] The Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), creates an explicit exception to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny by allowing a judge to determine a fact of prior conviction without violating a defendant's Sixth Amendment rights.  The fact of prior conviction is not at issue here; we are concerned with the facts *underlying* the prior conviction.

Consequently, the PSR is the only source of information about the crime. In it, the government claims, according to "court documents," that

> the defendant was arrested by the Greeley Colorado Police Department for shooting and injuring five victims in a drive-by shooting in the 900 block of 31st Avenue, Greeley, Colorado, on July 9, 1995. Following a dispute with several individuals, the defendant discharged a shotgun into a crowd of pedestrians causing [] injuries.

PSR, ¶ 26. Of course, this description, if accurate, describes a crime of violence by any definition. And if supported by proof allowable under *Taylor* and *Shepard*, the charged conduct would authorize the sentencing enhancement. Unfortunately, we do not have in the record on appeal the "court documents" relied on by the PSR. We thus cannot evaluate whether the records would be acceptable under the strictures of Supreme Court precedent.

## B. Third Degree Assault in Colorado

We must therefore turn to the plain language of the Colorado statute itself to determine if, standing alone, it would support the crime of violence enhancement. We start with the Guidelines' definition of a "crime of violence." A crime of violence is:

> any offense under federal, state, or local law that has as an element the use, attempted use, or threatened **use of physical force** against the person of another.

USSG § 2L1.2, Application Note 1(B)(iii) (emphasis added). The Guidelines, however, provide no additional explanation of the critical phrase—"the use of physical force."

Moving from the Guidelines to the Colorado statutes, third degree assault occurs when the defendant

> knowingly or recklessly **causes bodily injury** to another person or with criminal negligence he **causes bodily injury** to another person by means of a deadly weapon.

C.R.S. §18-3-204 (emphasis added). The statute goes on to define bodily injury as "physical pain, illness, or any impairment of physical or mental condition." C.R.S. § 18-1-901(3)(c).

Using the statutory definitions as a backdrop, Perez-Vargas argues that third degree assault in Colorado is not necessarily a crime of violence as defined by the Guidelines because the Guidelines focus on the **means** by which an injury occurs (the use of physical force). Colorado's third degree assault statute, on the other hand, focuses on the **result** of a defendant's conduct, *i.e.*, bodily injury. In other words, Colorado's statute looks to the consequences of the conduct, however applied, whereas the Guidelines look to the type of conduct that causes the injury. The government counters that third degree assault necessarily requires the use of force in order to cause bodily injury. Both Perez-Vargas and the government thus focus their arguments on the question of whether one must use

or threaten the use of physical force in order to commit third degree assault in Colorado.

Turning first to the language of the Colorado statute that defines third degree assault, we note that while it is likely most third degree assaults will involve the use or threatened use of physical force, thus qualifying the crime as a violent one under the Guidelines, the language of the statute allows for other possibilities. Indeed, at oral argument, Perez-Vargas's counsel provided several examples of third degree assault that would not use or threaten the use of physical force: recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals. One can imagine a number of other hypotheticals.

Since the language of the statute is broad, we turn to Colorado courts for interpretive assistance. Unfortunately, we have found no Colorado case law definitively holding that the third degree assault statute necessarily requires the application of force. While several cases in this context describe the use of force, they do not categorically imply one must always use force to violate the statute. *See, e.g., People v. Moore*, No. 01-CA-1760, 2005 WL 1412181 (Colo. Ct. App. Jun. 16, 2005); *People v. Goldfuss*, 98 P.3d 935 (Colo. Ct. App. 2004); *People v. Howard*, 89 P.3d 441 (Colo. Ct. App. 2003).

Turning to circuit precedent for help, one recent case is illustrative.[2]  In *United States v. Lucio-Lucio*, 347 F.3d 1202, 1206 (10th Cir. 2003), we had to determine whether violating Texas's drunk driving statute was a crime of violence.  We found there must be "a distinction between crimes that potentially involve violent conduct and crimes that merely involve the possibility of resulting harm." *Id.*  Thus, we found that not every "sufficiently dangerous activity . . . qualif[ies] as a crime of violence." *Id.*  Similarly, in *United States v. Torres-Ruiz*, 387 F.3d 1179 (10th Cir. 2004), we concluded that a drunk driving conviction does not necessarily include the intent element required by USSG § 2L1.2.  Such is the case here.

Other circuits have also addressed similar statutes.  In *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), for example, the Second Circuit considered whether the defendant, an immigrant, was removable after he violated Connecticut's third degree assault statute.[3]  The court found in *Chrzanoski* that

---

[2] We held in an unpublished decision prior to *Shepard* that Colorado's third degree assault statute supported a crime of violence enhancement where the summons and complaint and the defendant's plea agreement disclosed that the defendant had struck another person. *United States v. Miller*, 98 Fed. Appx. 801 (10th Cir. May 25, 2004).  The record here, in contrast, does not have similar evidence disclosing the underlying crime.

[3] An immigrant is removable if he is convicted of a crime of violence as defined by 18 U.S.C. § 16.  Section 16, containing similar language to USSG § 2L1.2, defines "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or

(continued...)

-9-

"[u]nder the plain language of [18 U.S.C.] § 16(a), use of force must be an element of the offense for that offense to be a crime of violence under § 16(a)." *Chrzanoski*, 327 F.3d at 191. The court concluded that nothing in the Connecticut third degree assault statute "require[d] the government to prove that force was used in causing the injury." *Id.* at 193. Therefore, because "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission," one who violates Connecticut's third degree assault statute does not necessarily commit a crime of violence. *Id.* at 195.

The Fifth Circuit reached the same conclusion in *United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002). The court had to determine if Gracia-Cantu's prior conviction in Texas for "injury to a child" constituted a crime of violence. *Id.* at 311. Looking to operative language that prohibited causing "bodily injury" to a child, the court applied a categorical approach and found that "the statute criminalizing injury to a child, does not require that the perpetrator actually use, attempt to use, or threaten to use *physical force* against a child." *Id.*

---

³(...continued)
property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." This definition is identical to the one found in USSG § 2L1.2 except that the Guidelines' definition does not include (b).

(emphasis added). The court cited to examples of when the statute could be violated without the use of force: leaving a child unattended near a pool, failing to aid children during a kidnapping, failing to remove a child from an abusive caretaker, or failing to provide proper medical care to a child. *Id.* at 312-13. The court ultimately concluded Gracia-Cantu's prior conviction for injury to a child was not a crime of violence. *See id.*

Colorado's third degree assault statute suffers from the same infirmities. Applying *Taylor* and *Shepard*, we conclude the statutory language of Colorado's third degree assault statute does not necessarily include the use or threatened use of "physical force" as required by the Guidelines. A prior conviction for third degree assault in Colorado, therefore, is not categorically a crime of violence under USSG § 2L1.2. Since we have an inadequate record of the facts supporting the prior conviction, our analysis is constrained by the language of the relevant statutes and Guidelines. And, as described above, we cannot say Perez-Vargas's prior conviction for third degree assault was a crime of violence.

### III. CONCLUSION

The district court erred in applying the crime of violence enhancement without sufficient evidence of the underlying crime. In light of our disposition of the enhancement issue, we need not address Perez-Vargas's argument under *United States v. Booker*. Accordingly, we REVERSE the district court's

-11-

application of the enhancement, and REMAND for further proceedings and re-

sentencing.