**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ARCADIO MATIAS-MEDINA, also
known as Martin El Korita,

      Defendant - Appellant.

No. 07-1382

(D. Colorado)

(D.C. No. 1:06-CR-00177-WDM)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **BRORBY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Defendant and appellant Arcadio Matias-Medina pled guilty to unlawful reentry of a previously deported alien, in violation of 8 U.S.C. § 1326(a) and (b).[1] He was sentenced to sixty months' imprisonment. He appeals his sentence, which we reverse and remand for resentencing.

## BACKGROUND

The following facts were stipulated in the Plea Agreement and Statement of Facts Relevant to Sentencing, and later incorporated into the Presentence Report ("PSR") prepared by the United States Probation Office and utilized by the court when sentencing Matias-Medina under the United States Parole Commission, Guidelines Manual ("USSG") (2006). On March 29, 2006, Immigration and Customs Enforcement ("ICE") authorities arrested Matias-Medina for suspected counterfeiting of an alien registration card, in violation of 18 U.S.C. § 1546. ICE authorities determined that Matias-Medina had been deported three times previously: once in 2005, following his conviction in New Mexico federal district court for violating 8 U.S.C. § 1326(a)(1) and (2); once in 1998 for criminal impersonation in violation of C.R.S. § 18-5-113(1)(e), a felony under Colorado law and an "aggravated felony" pursuant to 8 U.S.C. § 1101(a)(43); and

_____

[1]He was also charged with fraud and misuse of visas, permits and other documents, in violation of 18 U.S.C. § 1546. He was arrested on the immigration violation because he was the subject of an investigation into the production of false identity documents.

on another occasion following his conviction for third degree assault, a Class 1 misdemeanor under Colorado law and a "felony that is a crime of violence" pursuant to USSG § 2L1.2(b)(1)(A)(ii).[2]  Matias-Medina has never received authority to enter the United States legally.

In calculating the applicable advisory Guidelines range, the PSR determined that Matias-Medina's base offense level was eight, pursuant to USSG §2L1.2(a).  That offense level was then increased by sixteen points pursuant to USSG §2L1.2(b)(1)(A)(ii), because, the PSR concluded, one of  Matias-Medina's prior deportations occurred following a conviction for a crime of violence (the third degree assault, which is a felony Class 1 misdemeanor under Colorado law, but a "felony that is a crime of violence" under USSG §2L1.2(b)(1)(A)(ii)). Matias-Medina's acceptance of responsibility entitled him to a further three-point reduction, resulting in a total adjusted offense level of twenty-one.  With fifteen criminal history points, an offense level of twenty-one yielded a Guidelines advisory range of seventy-seven to ninety-six months' imprisonment.

After the PSR was prepared, Matias-Medina filed a sentencing statement and memorandum, arguing that the sixteen-level enhancement under USSG 2L1.2(b)(1)(A)(ii) overstated the seriousness of, and effectively double-counted,

---

[2]As the discussion below will demonstrate, the PSR assumed that the Colorado crime of third degree assault qualifies as a "crime of violence" under USSG §2L1.2(b)(1)(A)(ii), although the issue is not as straightforward as that may seem.

his "relatively minor offense" of third degree assault. He argued that the actual conduct underlying that offense was so trivial that his six-month jail term and $500 fine were suspended. At sentencing, Matias-Medina's defense counsel did not object to the PSR, but did note that he had filed the motion for the variance. The district court then "incorporated by reference [the PSR] as part of [its] findings and conclusions." Tr. of Sent. Hr'g at 3, R. Vol. III. After starting at offense level eight, moving up sixteen for the crime of violence, then down three for acceptance of responsibility, the court arrived at the net level of twenty-one. The court then observed:

> The defendant has an extensive criminal record. In addition to the assault charge mentioned there are numerous drinking and . . . under the influence[] driving. There are also several convictions related to identity and unlawful re-entry. He also was on supervised release at the time of the instant offense and it was also committed within two years of his release from custody, all of which results in . . . total criminal history points of 15 which places him in Criminal History Category VI.
> The custody range is 77 to 96 months according to the guidelines, supervised release of two to three years.

Id. at 3. When the court asked for any further argument from defense counsel, defense counsel stated:

> I really don't have anything more to add to the motion for variance. I think it lays out the problem and kind of the double whammy that's befallen Mr. Matias-Medina by virtue of this conviction back in 1995 for third-degree assault. He has got two criminal history points for that and then this huge and . . . the most serious upward adjustment for the underlying crime. Had that crime not counted, . . . he would have had plus eight rather than a plus 16.

-4-

And this is a problem that comes up because third-degree assault statute in Colorado is a misdemeanor under Colorado law, but becomes a felony under most definitions of what a felony is because it's punishable by more than a year in jail. . . And so, . . . the underlying facts of the case I would submit are really not relevant to the decision making process because it's about three degrees of hearsay when it gets to the report before the Court, but I think the Court can look at the fact that he was allowed to plead guilty to the third-degree assault which is a crime that requires a knowing or reckless mental state and bodily injury to the vehicle.

Id. at 4. Defense counsel then stated, "certainly when you look at the other crimes in the guideline that qualify for the 16-level enhancement, it is the most minor of any of those." Id. at 5.

The district court sentenced Matias-Medina, explaining that it was considering "the guidelines as one of the factors under 3553(a)"; noting that "there is . . . merit in the argument made by defendant that what ends up being in essence a misdemeanor charge has significant ramifications, essentially more than doubles the custody recommended by the guidelines;" but "looking at the nature and circumstances, considering all of the 3553 factors," the court agreed with the government "that . . . this is an individual who has been deported three times, this will be the fourth time. And therefore, it's more [the court] views his history to be a predictor that he will continue to violate." Id. at 8-10. The court went on to consider "the history and characteristics of the defendant" [including] "[h]is [extensive] criminal history," noting Matias-Medina "certainly constitutes a threat to the public with his repeated driving violations mixed with alcohol." Id. The

court further explained that Matias-Medina had "not learned his lesson and he displays a lack of respect for the law and a lengthier sentence is appropriate, also to provide deterren[ce]" against continued criminal conduct. The court finally concluded:

> In my judgment the nature of the crime that is the predicate for the 16-level increase does result in placing this defendant in the same category as those who have committed much more serious crimes, so I am sympathetic that the guideline range may be too excessive. On the other hand, the argument of defendant that he just simply be treated as if it were an aggravated felony and reduce the range to 33 to 41 . . . seems to me to be too much of a reduction.
> I am comfortable that a reasonable sentence for this defendant under these circumstances taking into account his bad record, disregard for the law and threat to society should be a serious but not as serious as the guidelines would otherwise recommend.

Id. at 8-11. The court accordingly sentenced Matias-Medina to sixty months.

## DISCUSSION

It appears in this case as if everyone assumed that a prior conviction for third degree assault in Colorado qualifies as a "crime of violence" for purposes of USSG §2L1.2(b)(1)(A)(ii). The parties simply disagreed on whether this was a fair result, given that the assault involved a relatively lower degree of violence than many crimes. Matias-Medina argued that the Guidelines unfairly double-counted the effect of that prior assault conviction and also accorded it the greatest enhancement effect (sixteen levels), although he characterizes the actual offense underlying that enhancement as fairly trivial. The government stood behind the

-6-

crime of violence characterization, and the district court, realizing that the Guidelines were advisory only, determined that inclusion of the full sixteen-point enhancement suggested a sentence that was too long, in light of the 18 U.S.C. § 3553(a) factors. The court thus exercised its discretion to vary downward and imposed a sixty-month sentence. No one, however, seemed aware that there is a question under our cases whether a Colorado conviction for third-degree assault necessarily or categorically qualifies as a crime of violence under USSG § 2L1.2(b)(1)(A)(ii), or whether there are circumstances in which such a conviction is properly *not* considered a crime of violence.

We review a sentence for reasonableness, assessing whether it was imposed in a procedurally reasonable way, and whether it is substantively reasonable. "A sentence is procedurally unreasonable if the court failed to calculate (or improperly calculated) the Guidelines range, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, selected a sentence based on clearly erroneous facts, or failed to adequately explain the chosen sentence." United States v. Ellis, 2008 WL 2004276, at *3 (10th Cir. May 12, 2008) (internal alterations and quotations omitted). "A sentence is substantively unreasonable if, considering the factors set forth in 18 U.S.C. § 3553(a), the sentence is unreasonable in length." Id.

Matias-Medina argues that "the issue is not the proper calculation of the advisory guideline imprisonment range, but how to fix the significant flaw in that

calculation."  Appellant's Br. at 5.  We interpret this argument as a less-than-articulate assertion that the district court committed a procedural error in calculating the advisory Guidelines sentence.  "In reviewing a sentence on appeal, this court must first determine whether the sentence is procedurally reasonable."  United States v. Munoz-Nava, 2008 WL 1947011, at *8 (10th Cir. May 6, 2008).  "We review de novo the district court's interpretation of the Guidelines and its determination that [defendant's] prior conviction . . . is a crime of violence."  United States v. Perez-Vargas, 414 F.3d 1282, 1284 (10th Cir. 2005).

"When determining whether a prior conviction is a crime of violence, the Supreme Court has instructed sentencing courts to take 'a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'"  Id. at 1284 (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)).  If, however, the statute "is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto and findings by the sentencing court."  Id. (further quotations omitted).  "According to the Supreme Court, then, we must limit ourselves to (1) an examination of the language of the statute under which [defendant] was convicted, (2) the charging document or court records of comparable reliability, and (3) any admissions (including those within the plea agreement) [defendant] made regarding the facts of his prior

convictions." Id. at 1285 (citing Taylor, 495 U.S. at 600; Shepard v. United

States, 544 U.S. 13, 26 (2005)).

In Perez-Vargas, we held that "[a] prior conviction for third degree assault

in Colorado . . . is not categorically a crime of violence under USSG § 2L1.2."

Id. at 1287.  We stated that a reviewing court therefore could properly look

beyond an ambiguous assault statute to charging documents, the terms of the plea

agreement, or some comparable judicial record to determine on a case-by-case

basis whether an assault conviction qualifies as a crime of violence under

§ 2L1.2(b)(1)(A)(ii).

> To be sure, Perez-Vargas does not hold that a Colorado third-degree
> assault conviction can *never* be a crime of violence; rather, it
> clarifies that third-degree assault is not always a crime of violence.
> If the charging documents, plea agreement, transcript of a plea
> colloquy, or sentencing court findings of the prior state court
> conviction demonstrate that the third-degree assault did, in fact,
> involve the use, attempted use, or threatened use of physical force,
> then the particular defendant's prior assault conviction qualifies as a
> crime of violence under § 2L1.2(b)(!)(A)(ii).

United States v. Hernandez-Garduno, 460 F.3d 1287, 1294 (10ᵗʰ Cir. 2006).

In both Perez-Vargas and Hernandez-Garduno, we lacked sufficient

information about the prior conviction, from the kind of sources approved by the

Supreme Court, so that we had to remand the matter and direct the district court

to inquire whether the prior conviction was, in fact, a crime of violence.  We feel

compelled to follow the same course here.  The record in this case contains none

of the charging documents describing the prior assault, nor any court records from

that case, nor any explicit admission by Matias-Medina as to the facts of his prior conviction. We only have the PSR, which quotes from a PSR from a prior federal deportation proceeding. We simply "cannot evaluate whether the records [upon which the prior PSR relied] would be acceptable under the strictures of Supreme Court precedent." Perez-Vargas, 414 F.3d at 1285. We accordingly remand this case to the district court for it to make that evaluation.[3]

## CONCLUSION

For the foregoing reasons, we REMAND this case to the district court for resentencing.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[3]Of course, whether or not the district court determines that the prior conviction in Colorado qualifies as a crime of violence, it may of course be the subject of an enhancement under some other Guidelines provision.