**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRENT GALBREATH,

    Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRENT GALBREATH,

    Defendant - Appellant.

No. 17-6121
(D.C. No. 5:05-CR-00044-HE-1)
(W.D. Oklahoma)

No. 17-6122
(D.C. Nos. 5:16-CV-00632-HE
and 5:05-CR-00044-HE-1)
(W.D. Oklahoma)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Brent Galbreath pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), due to four Oklahoma convictions: two for second-degree burglary, one for second-degree rape, and one for maiming. After the Supreme Court invalidated the residual clause of the ACCA in *Johnson v. United States*, 135 S. Ct. 2551 (2015), we granted Mr. Galbreath permission to file a second 28 U.S.C. § 2255 motion. The district court[1] concluded that his convictions for second-degree burglary and maiming were violent felonies without the residual clause and denied his petition. We affirm the district court.

## I. BACKGROUND

On February 2, 2005, an Oklahoma highway patrol trooper arrested Mr. Galbreath. At the time of his arrest, Mr. Galbreath had three handguns and crack cocaine in his possession. The government filed a criminal complaint against Mr. Galbreath alleging one count of possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Mr. Galbreath entered a plea agreement with the government pursuant to which he pleaded guilty to the charge under § 922(g)(1), the government dismissed the charge under § 841(a)(1), and Mr. Galbraith waived his right to appeal the conviction or pursue collateral relief with certain exceptions. The

---

[1] While the same district judge sentenced Mr. Galbreath and denied his § 2255 motion, to avoid confusion, we refer to the district court at the time it sentenced Mr. Galbreath as the "sentencing court" and the district court at the time it denied his successive § 2255 motion as the "district court."

2

government advanced four prior Oklahoma convictions to qualify Mr. Galbreath under the ACCA: two second-degree burglary convictions, one second-degree rape conviction, and one maiming conviction. The sentencing court sentenced Mr. Galbreath to a prison term of 292 months in August 2005.

At the time of Mr. Galbreath's sentencing, a defendant qualified under the ACCA if he or she had "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The term "violent felony" included any crime punishable by imprisonment for a term exceeding one year that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (force clause); (2) "is burglary, arson, or extortion, involves use of explosives" (enumerated offenses clause); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (residual clause). *Id.* § 924(e)(2)(B)(i), (ii).

Mr. Galbreath attempted to appeal his conviction but we granted the government's motion to enforce the plea agreement. He then filed a first motion to vacate his sentence under 28 U.S.C. § 2255 which the district court denied. After an amendment to the sentencing guidelines, Mr. Galbreath filed a motion for a reduction of his prison sentence, and the district court reduced his sentence to 268 months. Mr. Galbreath appealed, arguing his sentence should have been reduced even further, but we affirmed. *United States v. Galbreath*, 506 F. App'x 736 (10th Cir. 2012).

Mr. Galbreath filed another motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) after the guidelines were again amended. While this motion was pending and after the Supreme Court invalidated the residual clause of the ACCA in *Johnson*, Mr. Galbreath sought authorization to file a second § 2255 motion, which we granted. The district court denied both of Mr. Galbreath's motions. As to the § 2255 motion, the district court noted that while the second-degree rape conviction was possibly a "violent crime" under only the residual clause, the sentencing court considered the two second-degree burglary convictions under the enumerated offenses clause and viewed the maiming conviction under the force clause. As to the § 3582 motion, the district court noted the government's efforts to enforce Mr. Galbreath's waiver in the plea agreement, which explicitly referenced § 3582(c), and denied relief based on that agreement. The district court granted Mr. Galbreath a certificate of appealability for his § 2255 motion, and he now appeals the district court's denial of his sentence reduction and § 2255 motions. Mr. Galbreath also filed a motion to this court to consolidate the two appeals.

## II. DISCUSSION

### A. *Standard of Review and Burden of Persuasion*

"On appeal from the denial of a § 2255 motion, ordinarily we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Snyder*, 871 F.3d 1122, 1125 (10th Cir. 2017) (internal quotation marks omitted). A "district court's determination that a defendant qualifies for an ACCA enhancement is a finding. But that finding rests on the sentencing record,

4

which is a matter of historical fact, as well as the relevant background legal environment at the time of sentencing, which is a legal conclusion." *United States v. Driscoll*, --- F.3d ---, ---, No. 16-8118, 2018 WL 2976271, at *4 n.3 (10th Cir. 2018) (internal quotation marks omitted).

Because this is a successive § 2255 motion, Mr. Galbreath "must pass through two gates." *United States v. Washington*, 890 F.3d 891, 894 (10th Cir. 2018). At the first gate, he must make a prima facie showing that his motion relies on newly discovered evidence or a new rule of constitutional law. *See id.* at 894–95. Mr. Galbreath passed through this first gate when we granted him authorization to file his second § 2255 motion. *See id.* at 894. At the second gate, he "must back up the prima facie showing with actual evidence to show he can meet this standard." *Id.* at 895 (internal quotation marks omitted). Because Mr. Galbreath purports to rely on a new rule of constitutional law by virtue of *Johnson*, he must "show by a preponderance of the evidence—*i.e.*, that it is more likely than not—his claim relies on *Johnson*." *Id.* at 896. It is not sufficient for Mr. Galbreath "to show the district court *could* have relied on the residual clause." *Id.* (emphasis added) (internal quotation marks omitted). And because the sentencing court did not identify which clause it relied upon during sentencing, Mr. Galbreath must show that the relevant legal background at the time of his sentencing in August 2005 and the record before the sentencing court establish he was sentenced under the residual clause. *See Snyder*, 871 F.3d at 1128–30.

The government concedes that Mr. Galbreath's second-degree rape conviction qualifies as a violent felony solely under the residual clause, so we consider only his burglary and maiming convictions.

## B. *Second-Degree Burglary Convictions*

We first consider Mr. Galbreath's second-degree burglary convictions under Okla. Stat. tit. 21, § 1435. Both the record before the sentencing court and the relevant legal background support the finding that the sentencing court viewed these convictions as falling under the enumerated offenses clause of the ACCA.

After the preparation of a Presentence Investigation Report (PSR), Mr. Galbreath filed a generalized objection to being labeled an Armed Career Criminal. The government responded to Mr. Galbreath's objections in a sentencing memorandum in which it argued that Mr. Galbreath's burglary convictions qualified under the enumerated offenses clause. The government conceded that Oklahoma second-degree burglary includes conduct beyond generic burglary as defined by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), but provided the charging documents for Mr. Galbreath's convictions that showed he was charged with burglary of buildings.

And during sentencing, the sentencing court emphasized the fact that it was burglary of buildings:

> In particular, the prior burglary offenses, as I think the government's brief indicates, you can't tell from the nature of the offense itself or from the statute itself that those are necessarily violent crimes, but *I think the underlying circumstances as reflected by the convictions do indicate that they were burglary of buildings such as would be*

6

> *considered a violent crime within the standards that apply in these sorts of federal proceedings.*

Supp. App. at 82 (emphasis added). Mr. Galbreath concedes that both the government's sentencing memorandum and the sentencing court's comments suggest the sentencing court viewed the second-degree burglaries as falling under the enumerated offenses clause and not the residual clause.

Mr. Galbreath argues, however, that without the residual clause, his burglary convictions fail because we must apply current case law. Specifically, he contends we must apply the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). We disagree. As noted above, under *Snyder*, we must look at the relevant legal background *at the time of sentencing*. And by 2005, when Mr. Galbreath was sentenced, we had consistently held that Oklahoma second-degree burglary involving entering a building fell within *Taylor*'s definition of burglary. *See, e.g.*, *United States v. Green*, 55 F.3d 1513, 1515–16 (10th Cir. 1995); *United States v. Hill*, 53 F.3d 1151, 1153–55 (10th Cir. 1995) (en banc); *see also United States v. Couchman*, 720 F. App'x 501, 506–07 (10th Cir. 2018), *petition for cert. filed* Apr. 10, 2018 (No. 17-8480).

Both the sentencing record and the relevant legal background show that Mr. Galbreath's second-degree burglary convictions fell within the enumerated offenses clause at the time of sentencing.

## C. *Maiming*

We now consider Mr. Galbreath's maiming conviction under Okla. Stat. tit. 21, § 751. As with the burglary convictions discussed above, the sentencing court record and the relevant legal background support the finding that the sentencing court viewed this conviction as falling under the force clause of the ACCA.

In its response to Mr. Galbreath's objections to the PSR, the government noted the maiming statute "prohibits inflicting a disabling or disfiguring injury upon a person with the premeditated design to injure" and argued that it "clearly meets the ACCA definition of 'violent felony' by having as an element the 'use . . . of physical force against the person of another.'" App. I at 43 (quoting 18 U.S.C. § 924(e)(1)(B)(i)). During sentencing, the sentencing court did not specifically address the maiming conviction, noting only that "the indicated offenses plainly do qualify as violent crimes within the meaning of the" ACCA. Supp. App. at 81.

Mr. Galbreath argues, however, that "the record *at* sentencing made no mention of which clause applied" to the maiming conviction and the maiming conviction would not qualify as a violent crime under the force clause. Appellant's Reply Br. at 1. As noted above, the relevant inquiry is whether the maiming conviction satisfied the force clause at the time of sentencing.

One month prior to Mr. Galbreath's sentencing, we decided *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005), *abrogated by United States v. Castleman*, 572 U.S. 157 (2014), *as recognized in United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017). In *Perez-Vargas*, we reviewed a district court's sixteen-

8

level sentence enhancement under the United States Sentencing Guidelines (USSG) resulting from the court's conclusion that Mr. Perez-Vargas's conviction for third-degree assault in Colorado was a "crime of violence" under the force clause. *Id.* at 1283.[2] We noted that the Supreme Court, in its *Taylor* decision, had "instructed sentencing courts to take 'a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.'" *Id.* at 1284 (quoting *Taylor*, 495 U.S. at 600). But in our application of *Taylor*, we "held that if the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding, such as the charging documents." *Id.* (internal quotation marks omitted).

We then determined that, because the record did not include any proof allowable under *Taylor* or *Shepard v. United States*, 544 U.S. 13 (2005), "[w]e must . . . turn to the plain language of the Colorado statute itself to determine if, standing alone, it would support the crime of violence enhancement." *Id.* at 1285. The Colorado statute prohibited "knowingly or recklessly caus[ing] bodily injury to another person or with criminal negligence . . . caus[ing] bodily injury to another

---

[2] While *Perez-Vargas* involves the interpretation of a "crime of violence" under the USSG, both the ACCA and the USSG include the identical definition at issue here: any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. 924(e)(2)(B)(i); USSG § 2L1.2, Application Note 1(B)(iii). Thus, in 2005, precedent related to the USSG would also be relevant to an analysis of the same phrase in the ACCA. This is particularly so because *Perez-Vargas* interpreted *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), which are cases interpreting "crime of violence" under the ACCA.

person by means of a deadly weapon," Colo. Rev. Stat. § 18-3-204, and defined bodily injury as "physical pain, illness, or any impairment of physical or mental condition," *id.* § 18-1-901(3)(c). Unlike the definition of "crime of violence" in the USSG which focused on the means by which an injury may occur, Colorado's statute focused on the result of conduct. *Perez-Vargas*, 414 F.3d at 1285. Although we acknowledged that "most third degree assaults will involve the use or threatened use of physical force, . . . the language of the statute allows for other possibilities," such as indirect force. *Id.* at 1286. Because the "statutory language of Colorado's third degree assault statute does not necessarily include the use or threatened use of 'physical force,'" we held it was "not categorically a crime of violence." *Id.* at 1287. And because we had "an inadequate record of the facts supporting the prior conviction, our analysis [was] constrained by the language of the relevant statutes." *Id.*

At first glance, *Perez-Vargas* may appear to support Mr. Galbreath's position. Oklahoma's maiming statute provides that "[e]very person who, with premeditated design to injure another, inflicts upon his person any injury which disfigures his personal appearance or disables any member or organ of his body or seriously diminishes his physical vigor, is guilty of maiming." Okla. Stat. tit. 21, § 751. Similar to the third-degree assault statute at issue in *Perez-Vargas*, Oklahoma's maiming statute focuses on the result of a criminal defendant's conduct, not the means. And, as noted by Mr. Galbreath, "poisoning a person with the intent to cause permanent injury, and a resulting permanent injury, is conduct . . . within the terms of

10

the statute," but, at least at the time of sentencing, may not constitute the requisite physical force. Appellant's Br. at 22.

Mr. Galbreath's case differs from *Perez-Vargas* in a crucial aspect—the sentencing court here had the charging document for Mr. Galbreath. While the maiming statute may be "broad enough to encompass both violent and nonviolent crimes, [we] can look beyond the statute to certain records of the prior proceeding, such as the charging documents." *Perez-Vargas*, 414 F.3d at 1284 (internal quotation marks omitted). And the charging document states that Mr. Galbreath "wilfully, knowingly and with the premeditated design to injure [the victim], . . . *brand[ed] LSP into [the victim's] arm with a red hot coat hanger* and thereby inflicted upon [the victim] injuries which disfigured her personal appearance." App. I at 53 (emphasis added). Contrary to the hypotheticals posited by Mr. Galbreath, his maiming conviction was based on a use of physical force against the victim, namely branding her with a red hot coat hanger. Because the sentencing court had the charging documents, it did not need to rely on the residual clause. *See United States v. Pina-Nunez*, 167 F. App'x 66, 68 (10th Cir. 2006) (noting that under *Perez-Vargas*, Colorado third-degree assault convictions "do not categorically qualify as crimes of violence" and a "reviewing court, therefore, must look beyond the statute to the charging documents . . . to determine on a case-by-case basis whether a Colorado conviction for third-degree assault qualifies as a crime of violence"); *United States v. Morales-Chavez*, 153 F. App'x 540, 545 (10th Cir. 2005) (finding that, under *Perez-Vargas*, a violation of the Colorado third-degree assault statute "is

11

not necessarily a crime of violence," but then determining it was a crime of violence there because the charging document "clearly supports the district court's holding that the defendant's conviction . . . included the 'use of force'").[3]

Thus, both the sentencing record and the relevant legal background suggest the sentencing court viewed Mr. Galbreath's maiming conviction as a crime of violence under the elements clause—not the residual clause. As a result, Mr. Galbreath has not "show[n] by a preponderance of the evidence—*i.e.*, that it is more likely than not—his claim relies on *Johnson*." *Washington*, 890 F.3d at 896. Accordingly, we affirm the district court's denial of his § 2255 motion.

## D. *Sentence Reduction Motion*

Mr. Galbreath concedes that he is presently ineligible for a sentence reduction because he was sentenced under the ACCA. *See* USSG § 1B1.10(a)(2)(B) (a sentence reduction is not authorized under § 3582(c)(2) if an amendment "does not have the effect of lowering the defendant's applicable guideline range"). Because we affirm the district court's denial of Mr. Galbreath's § 2255 motion, we also affirm the denial of his motion to reduce his sentence.

## III. CONCLUSION

Neither the relevant background legal environment nor the record before the sentencing court reveal that the sentencing court more likely than not relied on the residual clause to find that the burglary convictions or the maiming conviction

---

[3] While these cases were decided up to six months *after* Mr. Galbreath was sentenced, they provide insight into the relevant legal background and contemporaneous interpretation of *Perez-Vargas*.

12

qualified as crimes of violence under the ACCA. Accordingly, Mr. Galbreath has not established by a preponderance of the evidence that his motion "relies on" *Johnson*. He has therefore failed to satisfy the requirements for a successive § 2255 motion and we AFFIRM the district court's denial of that motion. We also GRANT his motion to consolidate the two appeals and AFFIRM the district court's denial of Mr. Galbreath's motion to reduce his sentence.

Entered for the Court


Carolyn B. McHugh
Circuit Judge