FILED
United States Court of Appeals
Tenth Circuit

April 23, 2019

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

───────────────────────────────

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

AARON EUGENE COPELAND,

     Defendant - Appellant.

No. 17-5125

───────────────────────────────

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. Nos. 4:16-CV-00490-CVE-PJC & 4:08-CR-00137-CVE-1)**

───────────────────────────────

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, Office of the Federal Public Defender, with him on the briefs), Tulsa, Oklahoma, for Defendant - Appellant.

Leena Alam, Assistant United States Attorney (R. Trent Shores, United States Attorney, Northern District of Oklahoma, with her on the brief), Tulsa, Oklahoma for Plaintiff - Appellee.

───────────────────────────────

Before **MATHESON**, **PHILLIPS**, and **EID**, Circuit Judges.

───────────────────────────────

**MATHESON**, Circuit Judge.

───────────────────────────────

In 2008, Aaron Eugene Copeland pled guilty to being a felon in possession of a firearm. The district court imposed an enhanced sentence of 15 years in prison under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on his

two prior drug offenses and one prior burglary. Mr. Copeland did not appeal. After he brought several unsuccessful motions for habeas relief under 28 U.S.C. § 2255, we authorized Mr. Copeland to bring a successive § 2255 motion to assert that his sentence is invalid under *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the ACCA's definition of violent felony in its residual clause is unconstitutionally vague.

Mr. Copeland's § 2255 motion claimed the sentencing court relied on the unconstitutional residual clause to find that his prior burglary was a violent felony and therefore the court should not have enhanced his sentence. The district court denied the motion, finding that it did not sentence Mr. Copeland under the residual clause and that his motion accordingly could not rely on *Johnson*. Exercising jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253(a), we reverse.

## I. BACKGROUND

To help understand the facts and issues that Mr. Copeland's § 2255 motion presents, we sketch the legal landscape surrounding this case, including discussion of the ACCA's definitions of "violent felony," the Supreme Court's decision in *Johnson*, and the requirements for bringing second and successive § 2255 motions. We then describe the district court proceedings in 2008 leading to Mr. Copeland's sentence, followed by the § 2255 proceedings in 2017 leading to this appeal. We present additional legal background later in the opinion.

## A. *Legal Landscape*

### 1. **The ACCA**

It is a federal crime "for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm or ammunition." 18 U.S.C. § 922(g). A violation of this felon-in-possession statute usually carries a maximum penalty of 10 years in prison. 18 U.S.C. § 924(a)(2). But under the ACCA, a person who "has three previous convictions . . . for a violent felony or serious drug offense, or both" is subject to a minimum sentence of 15 years. 18 U.S.C. § 924(e).

This appeal concerns the meaning of "violent felony." The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that also:

(1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," *id.* § 924(e)(2)(B)(i)—**the elements clause**;

(2) "is burglary, arson, or extortion, [or] involves the use of explosives," *id.* § 924(e)(2)(B)(ii)—**the enumerated clause**; or

(3) "otherwise involves conduct that presents a serious potential risk of physical injury to another," *id.* § 924(e)(2)(B)(ii)—**the residual clause**.

Only the enumerated and residual clauses are pertinent to this appeal. Note that "burglary" is listed as one of the offenses in the enumerated clause.

### 2. *Johnson v. United States*

In 2015, the Supreme Court held in *Johnson* that the ACCA's residual clause is "unconstitutionally vague," 135 S. Ct. at 2557, leaving only the elements and

enumerated clauses to define a violent felony.  In 2016, the Court held in *Welch v. United States*, 136 S. Ct. 1257 (2016), that *Johnson* "announced a substantive rule that has retroactive effect in cases on collateral review."  *Id.* at 1268.

3.  **Section 2255 and Second or Successive Motions**

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution" may move the district court that sentenced him "to vacate, set aside[,] or correct the sentence."  28 U.S.C. § 2255(a).  "Before a federal prisoner may file a second or successive motion under § 2255, the prisoner must first obtain an order from the appropriate court of appeals authorizing the district court to consider the motion."  *In re Cline*, 531 F.3d 1249, 1250 (10th Cir. 2008) (per curiam); *see* 28 U.S.C. §§ 2244(b)(3), 2255(h).

A circuit court may authorize a second or successive § 2255 motion in two circumstances.  This appeal turns on one of them—whether the motion "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).[1]  "A motion 'contains' a new rule of constitutional law, as required by § 2255(h), if the claim for which authorization is sought 'relies on' the new rule."  *United States v. Murphy*, 887 F.3d 1064, 1067 (10th Cir. 2018).

---

[1] The other circumstance is when "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense."  28 U.S.C. § 2255(h)(1).

A movant attempting to file a second or successive § 2255 motion must pass two gates. The first is obtaining authorization from the circuit court to file the motion, which requires only "a prima facie showing to the court of appeals that the motion satisfies the requirements of § 2255(h), defined as a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Id.* at 1068 (quotations omitted). The second requires "a determination by the district court that the petition does, in fact, satisfy those requirements." *Id.* This appeal concerns the second gate.

## B. *Mr. Copeland's Guilty Plea and Sentencing*

In 2008, Mr. Copeland pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The following describes the proceedings leading to his plea and sentence.

### 1. **Change of Plea Hearing**

At Mr. Copeland's change of plea hearing, the district court and the parties discussed whether Mr. Copeland had at least three prior offenses that qualified him for an ACCA-enhanced sentence. The parties agreed that Mr. Copeland had two predicate serious drug offenses. *See* ROA, Vol. II at 13-15.

The discussion turned to whether Mr. Copeland's 1981 conviction in California for second-degree burglary was a § 924(e) violent felony. Mr. Copeland's counsel said:

> I've pulled the statutes there in California, and I was not able
> to get the actual judgment and sentence. You have to do that
> in writing, and it takes a lot of—a long time, more than I had.

5

But out of an abundance of caution, I certainly counseled Mr. Copeland as to my concerns, and I hope I'm wrong.

*Id.* at 14. The district court then explained to Mr. Copeland,

[W]hat we're talking about is whether . . . second-degree burglary . . . meets the definition of a violent felony under the Armed Career Criminal Act. We won't know until the probation officer and your attorney get all the records from California, compare your conviction to the statute, compare it to the [U.S. Sentencing Guidelines ("Guidelines")] to determine whether you fall under the act or not.

*Id.* at 15.[2]

The court asked the probation officer whether he had "any better information than [the court or the parties] on whether or not [the § 924(e) enhancement] applie[d]." *Id.* at 16. The probation officer responded that he did not, but he added that, according to an application note in U.S.S.G. § 4B1.4, "the definition of a crime of violence under the [G]uidelines is different than the one in the statute. And the one in the [G]uidelines limits burglaries to residential, but the one in the statute does not limit it." *Id.* at 16. The court asked, "So when we're doing Armed Career Criminal Act, we're going under the statutory definition?" The probation officer affirmed the court's understanding. *Id.*[3]

The district court advised Mr. Copeland again that the "burglary charge" was a "sentencing factor[] that c[ould] enhance [his] sentence." *Id.* at 28. Then Mr. Copeland

---

[2] It is not clear why the court referred initially to the Guidelines.

[3] As explained below, in 2008, the enumerated clause in the Guidelines differed from the one in § 924(e)(2)(B)(ii), but the residual clause in the Guidelines was identical to the one in § 924(e)(2)(B)(ii). *See infra* note 10. This suggests that the court's colloquy with the probation officer concerned the enumerated clause.

pled guilty, and the district court accepted his plea. *Id.* at 36-37. The court concluded the proceedings by advising Mr. Copeland that the probation officer would prepare a Presentence Investigation Report ("PSR"), "[a]nd if there are any issues, particularly with regard to the Armed Career Criminal Act, we'll have a sentencing hearing if that's an issue." *Id.* at 37-38.

2. **Presentence Investigation Report**

The PSR reported that Mr. Copeland had been convicted in 1981 of "Burglary Second Degree" in Oakland Superior Court and sentenced to one year in jail and three years on probation. ROA, Vol. III at 7. It said Mr. Copeland and two other men "used a water meter cover to break a window and enter" a California shoe store. *Id.* "The trio stole 104 pairs of shoes, valued at a total of $2,600. They were apprehended due to a witness observing them run out of the store carrying large plastic bags and notifying police." *Id.* The PSR did not reveal the source of this information. *See id.*

The PSR advised that Mr. Copeland was "an armed career criminal under the provisions of 18 U.S.C. § 924(e), due to his convictions for Burglary Second Degree" and the two serious drug offenses. *Id.* at 6. It did not cite to which part of § 924(e)(2)(B)(ii)—the enumerated clause or the now-unconstitutional residual clause—it relied on to categorize Mr. Copeland's California second-degree burglary conviction as a violent felony. *See id.*

7

3. **Sentencing Hearing**

At the sentencing hearing, Mr. Copeland, through counsel, stated he had no objection to the PSR. ROA, Vol. II at 43-44. The district court accepted the PSR's findings of fact. *Id.* at 44. It then sentenced Mr. Copeland to 180 months in prison—the statutory minimum under § 924(e)—and five years of supervised release. *Id.* at 50. The court did not address its basis for treating California second-degree burglary as a violent felony.

## C. *Post-Conviction § 2255 Proceedings*

Mr. Copeland did not appeal[4] but filed several unsuccessful motions to challenge his sentence under 28 U.S.C. § 2255.[5] After *Welch* held that *Johnson* applies retroactively on collateral review, we granted Mr. Copeland's request to file a successive § 2255 motion to challenge his sentence on the ground that it was based on the ACCA's unconstitutional residual clause, in violation of *Johnson*. *In re Copeland*, No. 16-5075 (10th Cir. July 22, 2016). With this authorization, Mr.

---

[4] Mr. Copeland's failure to file a direct appeal raising a residual clause vagueness claim does not foreclose his § 2255 motion. The Government has not objected on this ground. And even assuming the procedural-default rule applies, a "*Johnson* claim was not reasonably available during the time when [Mr. Copeland] could have filed a direct appeal, and this is sufficient to establish cause. Moreover, if [Mr. Copeland] is correct regarding his *Johnson* claim . . . . [he] has demonstrated actual prejudice." *United States v. Lewis*, 904 F.3d 867, 870 (10th Cir. 2018) (quotations omitted).

[5] *See In re Copeland*, No. 15-5097 (10th Cir. Nov. 5, 2015); *In re Copeland*, No. 14-5035 (10th Cir. April 17, 2014); *United States v. Copeland*, 539 F. App'x 918, 919 (10th Cir. 2013); *United States v. Copeland*, 509 F. App'x 760, 761 (10th Cir. 2013); *United States v. Copeland*, No. 13-CV-0479-CVE-FHM, 2013 WL 4022062, at *1 (N.D. Okla. Aug. 6, 2013).

Copeland moved the district court under § 2255 to vacate, set aside, or correct his sentence. ROA, Vol. I at 32.

The district court denied his motion. *United States v. Copeland*, No. 08-CR-0137-CVE, 2017 WL 4819108, at *4 (N.D. Okla. Oct. 25, 2017). It found "there is no possibility that [Mr. Copeland's] burglary conviction was treated as a violent felony under the residual clause." *Id.* at *3. The court pointed to the discussion at the change of plea hearing: "The [c]ourt advised [Mr. Copeland] that it would not know if he qualified for sentencing under the ACCA until the probation office and his attorney gathered the necessary records to determine if his conviction qualified as a *generic burglary*."[6] *Id.* (emphasis added). The court concluded: "[T]he evidence is clear that [Mr. Copeland's] conviction for second[-]degree burglary was treated as a violent felony under the enumerated offense clause of the ACCA." *Id.*

Because the court found in 2017 that it sentenced Mr. Copeland in 2008 under the enumerated clause, it concluded that "*Johnson* has no application in this case" and that any other arguments Mr. Copeland urged were beyond the scope of our authorization of his successive § 2255 motion. *Id.* at *4.

The district court entered judgment against Mr. Copeland, and Mr. Copeland timely appealed. *See* Fed. R. App. P. 4(a)(1)(B)(i). We granted a certificate of appealability.

---

[6] As we explain below, the transcript of the change of plea hearing shows that the district court did not use the words "enumerated" or "generic."

9

## II. DISCUSSION

We begin with our standard of review and the burden of proof. We then explain how courts determine whether there is sufficient evidence of *Johnson* error to grant relief on a § 2255 motion. We conclude that Mr. Copeland has met his burden to show his sentence was based on the residual clause.

### A. *Standard of Review and Movant's Burden*

#### 1. Standard of Review – *Johnson* Error

The parties disagree about the standard of review. Mr. Copeland argues it is de novo. Aplt. Reply Br. at 2. The Government contends we review the district court's findings for clear error and its conclusions of law de novo. Aplee. Br. at 7. Our cases, in particular those addressing a district court's denial of a § 2255 movant's *Johnson*-error claim, support Mr. Copeland's position.

In recent cases, this court said, "On appeal from the denial of a § 2255 motion, ordinarily we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Driscoll*, 892 F.3d 1127, 1130 (10th Cir. 2018); *United States v. Snyder*, 871 F.3d 1122, 1125 (10th Cir. 2017) (same quotation); *see also United States v. Lewis*, 904 F.3d 867, 870 (10th Cir. 2018) (similar quotation). This quotation came from *United States v. Barrett*, 797 F.3d 1207, 1213 (10th Cir. 2015), which in turn quoted from *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011). But *Barrett* and *Rushin*, neither of which concerned *Johnson*-related claims, both said more—that "where, as here, the district court does not hold an evidentiary hearing, but rather denies the motion as a matter of law upon an uncontested trial record, our review is strictly de

novo." *Barrett*, 797 F.3d at 1213 (quotations and brackets omitted); *Rushin*, 642 F.3d at 1302.

This court also recently said in *United States v. Murphy*, 887 F.3d 1064, 1068 (10th Cir. 2018), "We review the dismissal of a § 2255 motion de novo." We cited *Snyder* for this statement. *Id.* Shortly thereafter, in an appeal from a district court ruling that the movant had failed to show he had a *Johnson* claim to satisfy § 2255(h)(2), the panel, citing *Murphy*, again said, "We review the district court's determination de novo." *United States v. Washington*, 890 F.3d 891, 895 (10th Cir. 2018) (emphasis omitted).

We think the proper reading of these cases is that our review of a district court's denial of a § 2255 *Johnson* claim is de novo unless the court conducted an evidentiary hearing from which it made findings. Unless the district court had the benefit of observing live testimony in an evidentiary hearing, this court can review the sentencing record and the relevant background law on equal footing with the district court.[7]

The de novo standard is consistent with our other recent § 2255 cases raising *Johnson*-related claims. This court recently reaffirmed that we conduct a de novo review of a denial of a § 2255 motion when the district court did not hold an evidentiary hearing. *United States v. Pullen*, 913 F.3d 1270, 1275 (10th Cir. 2019) (quoting *Barrett*); *United States v. Pam*, 867 F.3d 1191, 1197 (10th Cir. 2017) (quoting *Rushin*).

---

[7] To support its preferred standard of review, the Government quotes *United States v. Viera*, 674 F.3d 1214 (10th Cir. 2012): this court "review[s] the district court's findings for clear error and its conclusions of law de novo." *Id.* at 1217; *see* Aplee. Br. at 7. But *Viera* quotes *Rushin* for this proposition, and, as noted above, *Rushin* goes on to say that review is de novo when the district court has not held an evidentiary hearing. 642 F.3d at 1302.

2. **Standard of Review – Sentencing Record and Background Law**

The *Driscoll* panel also addressed the standard of review for the two steps leading to the ultimate determination of whether a sentencing court relied on the residual clause: "[W]e review the [district court's] factual determinations about the sentencing record for clear error and the legal conclusions about the relevant background legal environment de novo." 892 F.3d at 1132-33. As applied to our consideration of the district court's analysis of the sentencing record, this statement is in tension with the rule that de novo review applies when there was no district court evidentiary hearing. But, as the discussion below shows, any such tension does not affect our disposition in this case.

3. **Burden of Proof**

The § 2255 movant bears the burden of proving by a preponderance of the evidence that "it was use of the residual clause that led to the sentencing court's enhancement of his sentence." *Driscoll*, 892 F.3d at 1135 (quotations omitted); *see also Washington*, 890 F.3d at 895-96.

B. *Legal Background*

To determine whether the sentencing court relied on the residual clause, we examine (1) "the sentencing record to confirm that 'there is no mention whatsoever of the residual clause in the PSR or any of the other sentencing court pleadings or transcripts,'" and (2) "the 'relevant background legal environment' at the time of sentencing to determine whether the district court would have needed to rely on the residual clause.'" *Driscoll*, 892 F.3d at 1132 (quoting *Snyder*, 871 F.3d at 1130) (brackets omitted). It may not be necessary to consult background law if the sentencing record "unambiguously"

12

shows the court relied on a clause other than the residual clause because background law "is only useful insofar as it helps to show the most likely reasoning of the district court." *Id.* at 1132 n.2.

1. **Sentencing Record**

In previous cases, we have examined the sentencing record for (1) references to the residual clause or another ACCA clause, *see, e.g.*, *Driscoll*, 892 F.3d at 1133, and (2) information about a movant's prior convictions, *Lewis*, 904 F.3d at 871; *Washington*, 890 F.3d at 896.

First, express "mention" of either the residual, elements, or enumerated clause[8] by the sentencing judge at sentencing, in a court order, in a PSR adopted by the sentencing judge, or in a party's motion may be relevant and even sufficient to show whether the sentencing court relied on the residual clause. *See Driscoll*, 892 F.3d 1133 n.2.

Second, facts about the movant's previous convictions contained in the PSR, sentencing hearing, or other parts of the district court docket, when viewed in light of background law, can often enable a court to determine "whether the district court relied on the residual clause in sentencing." *Washington*, 890 F.3d at 896; *see also Lewis*, 904 F.3d at 871-72.

---

[8] We have used the word "mention," or a variant thereof to describe review of the record to assess *Johnson* error. *See Driscoll*, 892 F.3d at 1133; *Murphy*, 887 F.3d at 1068; *Snyder*, 871 F.3d at 1128.

Nothing in our previous opinions excludes our review of any relevant evidence in the sentencing record regarding whether the sentencing court relied on the residual clause. For example, the court, the parties, or other participants in sentencing, such as a probation officer, may have made statements consistent with use of a particular clause. Until now, we have addressed this type of record evidence only in an unpublished case, where we considered the sentencing judge's comments in concluding that the court relied on the enumerated clause to sentence the movant. *See United States v. Couchman*, 720 F. App'x 501, 504-06 (10th Cir. 2018) (unpublished).

## 2. Background Legal Environment

"[T]he relevant background legal environment is, so to speak, a 'snapshot' of what the controlling law was at the time of sentencing and does not take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions." *Snyder*, 871 F.3d at 1129. It includes case law (1) holding that particular offenses qualify as violent felonies under specific ACCA clauses and (2) instructing how to determine whether an offense qualifies. *See id.* at 1129-30.

The *Driscoll* decision explained that we examine the relevant background legal environment at the time of sentencing "to determine whether the district court would have needed to rely on the residual clause." 892 F.3d at 1132. If the court's "only option was the residual clause" under the background law because it could not have relied on the enumerated or elements clause, "we conclude that the sentencing court must have relied on the residual clause." *Id*. at 1135. When background law

14

foreclosing the enumerated or elements clause is coupled with a silent or ambiguous record, the movant "has adequately shown it is more likely than not that the sentencing court relied on the residual clause to enhance his sentence." *Id*.

Accordingly, "[i]n *Johnson* cases . . . a court can often determine whether the district court relied on the residual clause in sentencing by looking to the relevant background legal environment that existed at the time of the [movant's] sentencing and the PSR and other relevant materials before the district court." *Washington*, 890 F.3d at 896 (quotations and brackets omitted). The movant may meet his burden to show the court relied on the residual clause by establishing that the background law did not permit reliance on the other clauses. *See Driscoll*, 892 F.3d at 1135; *see also Beeman v. United States*, 871 F.3d 1215, 1224 n.5 (11th Cir. 2017), *cert. denied,* No. 18-6385, 2019 WL 659904 (U.S. Feb. 19, 2019) ("Certainly, if the law was clear at the time of sentencing that only the residual clause would authorize a finding that the prior conviction was a violent felony, that circumstance would strongly point to a sentencing per the residual clause.").

## C. *Analysis*

The sentencing record does not explicitly mention which ACCA violent felony clause the district court relied on to enhance Mr. Copeland's sentence, though the change of plea hearing contains statements pointing more to reliance on the enumerated clause than the residual clause. The relevant background legal environment in 2008, however, prevented reliance on the enumerated clause and allowed reliance on the residual clause. Under these circumstances, we think our cases, especially *Driscoll*, require us to

15

conclude that the sentencing court must have relied on the residual clause. The district court therefore erred in denying Mr. Copeland's § 2255 motion, and because the error was harmful, we reverse.

1. **Sentencing Record**

We recounted evidence from the sentencing record in the background section above. As in *Snyder*, *Washington*, and *Driscoll*, the record does not include any reference, explicit or implicit, to the residual clause, and Mr. Copeland does not contend otherwise. It also does not include any explicit reference to the enumerated clause or terms associated with the clause, such as "generic burglary." But it is not silent, either. The discussions at the change of plea hearing and the PSR's description of the burglary offense at least suggest the court relied on the enumerated clause. And the district judge's statement and finding in 2017 that she did so are consistent with that suggestion. Nonetheless, the sentencing record is not clear.

a. *Change of plea hearing*

Although the sentencing record contains no direct statement of which ACCA clause the court relied on to find Mr. Copeland's offense to be a violent felony, two exchanges at the change of plea hearing support an inference that the district court sentenced Mr. Copeland under the enumerated clause.

First, Mr. Copeland's counsel stated, "I've pulled the statutes there in California, and I was not able to get the actual judgment and sentence. You have to do that in writing . . . ." ROA, Vol. II at 14. A few moments later, the district court said to Mr. Copeland, "We won't know [whether California second-degree burglary

16

is a violent felony] until the probation officer and your attorney get all the records from California, compare your conviction to the statute, compare it to the sentencing guidelines to determine whether you fall under the act or not." *Id.* at 15.

The records mentioned in the court's statement were likely intended to determine whether Mr. Copeland's burglary conviction was an offense under the enumerated clause rather than the residual clause. This is so because the law in 2008, as we explain below, (1) was certain that records could be used for an enumerated clause determination, and (2) was less certain whether the court could use records of a prior burglary conviction to determine that a prior offense was a violent felony under the residual clause, *United States v. Maldonado*, 696 F.3d 1095, 1099 (10th Cir. 2012) (stating the issue was undecided in the Tenth Circuit before 2012).[9]

Second, the district court asked whether the probation officer had "any better information . . . on whether or not [the § 924(e) enhancement] applie[d]." ROA, Vol. II at 16. The probation officer pointed to the differences between the enumerated clauses in § 4B1.2(a) of the Guidelines and in the ACCA, noting that the ACCA clause was not confined to residential burglaries and the Guidelines clause was. The court responded, "So when we're doing the Armed Career Criminal Act, we're going under the statutory definition?" *Id.* at 16. This exchange suggests the district court shared the probation officer's understanding that the definition of generic burglary

---

[9] Although cases like *Snyder* and *Driscoll* appear to suggest that we should examine the sentencing record and the relevant background law as separate sequential steps, in some instances, as in the discussion above, we must refer to background law to explain the relevance of certain sentencing record facts.

under the enumerated clause mattered to Mr. Copeland's sentencing. Only the enumerated clause differed between the statute and the Guidelines—there would have been no need to consider the difference to apply the residual clause.[10]

    b. *Sentencing hearing*

At sentencing, Mr. Copeland did not object to the PSR, which described his prior burglary offense as breaking and entering a structure with intent to steal—the elements of generic burglary. Neither the court nor the parties commented on the application of the ACCA, and the court "accept[ed] the [PSR] as its findings of fact." ROA, Vol. II at 44. The record does not show that the parties' or the court's understanding of the basis for an ACCA sentence changed in the three months between the change of plea hearing and the sentencing hearing. As discussed above, at the change of plea hearing the court suggested that the enumerated clause would be the basis for enhancing the sentence for the prior burglary. The PSR's description of the burglary conviction confirmed that basis, and Mr. Copeland did not object to the PSR. No one mentioned the residual clause. Accordingly, the record indicates the court relied on the enumerated clause in sentencing Mr. Copeland under the ACCA.

---

[10] In 2008, the Guidelines defined "crime of violence" to mean an offense "punishable by imprisonment for a term exceeding one year," U.S.S.G. § 4B1.2(a) (2008), that meets one of three criteria: (1) "has as an element the use attempted use or threatened use of physical force against the person of another," *id.* § 4B1.2(a)(1); (2) "is burglary of a dwelling, arson or extortion, [or] involves use of explosives," *id.* § 4B1.2(a)(2); (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another," *id.*

But, as we discuss next, the sentencing record is not as clear as the district court concluded.

    c. *Ambiguous sentencing record*

The district judge who denied Mr. Copeland's § 2255 motion in 2017 was the same judge who sentenced him in 2008. Because the district court did not specify whether its denial of Mr. Copeland's § 2255 motion was based at all on the judge's memory of the 2008 sentencing, we limit our review of the sentencing record to the transcripts of the change of plea sentencing hearings and to the PSR.[11] As explained below, we read that record as less conclusive about the basis for the ACCA sentencing enhancement than the district court's reading.

When it denied Mr. Copeland's § 2255 motion in 2017, the district court found that the sentencing record in 2008 unambiguously showed that it relied on the enumerated clause and not the residual clause to determine that Mr. Copeland's burglary conviction was an ACCA violent felony. The court said, "[T]here is no possibility that [Mr. Copeland's] burglary conviction was treated as a violent felony under the residual clause." *Copeland*, 2017 WL 4819108, at *3. It also said, "[T]he evidence is clear that [Mr. Copeland's] conviction for second[-]degree burglary was treated as a violent felony under the enumerated offense clause of the ACCA." *Id.*

---

[11] *But see United States v. Scully*, 798 F.2d 411, 412 (10th Cir. 1986) ("Appellate courts have approved a district judge's reliance on . . . memory to rule on the merits of a § 2255 motion where [the judge] supplements the record with personal knowledge in situations where the record does not reflect one way or another whether a defendant's allegations have any validity.").

19

The record, however, is not so clear. The district court said in 2017 that "[t]he [c]ourt advised [Mr. Copeland in 2008] that it would not know if he qualified for sentencing under the ACCA until the probation office and his attorney gathered the necessary records to determine if his conviction qualified as a *generic burglary*." *Copeland*, 2017 WL 4819108, at *3 (emphasis added). But while the transcript of the change of plea hearing does not rule out that the district court had generic burglary in mind, the transcript does not contain a specific reference to "generic burglary" or to the enumerated clause.

Based on our review, the district court could have plausibly found from the sentencing record that it had relied on the enumerated clause rather than the residual clause. But we take issue with the district court's conclusion that the sentencing record *unambiguously* supports this finding. The sentencing record, without any reference to the residual clause and only inferential references to the enumerated clause, is ambiguous.

The district court in 2017 did not address the relevant background legal environment at the time of sentencing. But because the sentencing record is ambiguous, we turn next to examine the relevant background law to inform our analysis of whether the district court relied on the residual clause when it enhanced Mr. Copeland's sentence. *See Driscoll*, 892 F.3d at 1132 n.2 (explaining that "when

. . . we are presented with an ambiguous sentencing record," we examine the relevant background law "to show the most likely reasoning of the sentencing court").[12]

## 2. **Background legal environment**

As the following discussion shows, the relevant background law at the time of Mr. Copeland's sentencing in 2008 supports a finding that the district court could only have relied on the residual clause to determine that his California burglary conviction was a violent felony under the ACCA.

*Taylor v. United States*, 495 U.S. 575 (1990), was the primary source of relevant background law in 2008. *Taylor* used California burglary as an example of a crime that is broader than generic burglary and that could not generally qualify as an enumerated clause predicate offense. *Id.* at 591, 599. But *Taylor* also said that a burglary conviction could qualify when the charging documents showed that the prior offense fell within the definition of generic burglary. *Id.* at 602. As we show below, however, additional background law about use of PSRs that contain information about a prior offense combined with the record in this case would have prevented the sentencing court's reliance on the enumerated clause.

---

[12] In our previous discussion of the standard of review, we noted that this court in *Driscoll* said that "we review the factual determinations about the sentencing record for clear error and the legal conclusions about the relevant background legal environment de novo." 892 F.3d at 1132-33. We also noted our cases generally call for de novo review when, as here, the district court did not conduct an evidentiary hearing. This apparent tension does not affect our analysis of the sentencing record. Under either clear error or de novo review, the district court may not have erred in concluding that the sentencing record showed it had relied on the enumerated clause, but it did err in concluding that the record showed it had *unambiguously* relied on the enumerated clause.

21

a. *California burglary and generic burglary*

In *Taylor*, the Supreme Court held that a prior burglary conviction qualified as an ACCA predicate when the underlying statute required proof of all elements of generic burglary—"an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* at 598. If the statute swept more broadly than generic burglary, the prior conviction was not categorically an ACCA predicate under the enumerated clause. *Id.* at 599. Two features of the California burglary statute placed it outside the generic burglary definition.[13] First, it did not require unlawful entry: "California defines 'burglary' so broadly as to include shoplifting . . . ." *Taylor*, 495 U.S. at 591. Second, it criminalized entry into places other than buildings. *Id.* at 599. Accordingly, a conviction for California burglary—in either the first or second degree—could not categorically be an ACCA predicate under the enumerated clause. *Id.* at 591; *see United States v. Strahl*, 958

---

[13] When Mr. Copeland was convicted of California second-degree burglary, California Penal Code § 459 defined burglary as follows:

> Every person *who enters* any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, *tent, vessel, railroad car, trailer coach*, . . . inhabited camper, . . . vehicle . . . , aircraft . . . , mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, "inhabited" means currently being use for dwelling purposes, whether occupied or not.

Cal. Penal Code § 459 (1981) (emphasis added). Burglary of inhabited dwelling houses and various other inhabited places was burglary in the first degree. *Id.* § 460(1). "All other kinds of burglary [were] of the second degree." *Id.* § 460(2). The statute has been amended several times, and the current version includes additional locations that may be burglarized. *See* Cal. Penal Code § 459.

F.2d 980, 983 (10th Cir. 1992), *overruling on other grounds recognized by United States v. Trent*, 767 F.3d 1046, 1058 n.2 (10th Cir. 2014).

      b. *California burglary convictions on charges limited to elements of generic burglary*

In *Taylor*, the Supreme Court said that a sentencing court could "go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary" to determine whether a prior burglary offense qualified as an ACCA predicate under the enumerated clause. *Id.* at 602. Because the sentencing court's task was to determine the elements of the burglary conviction and not "the facts underlying [it]," *id.* at 600, it could consult only limited sources. These sources included the indictment or information and jury instructions. *Id.* at 602. In *Shepard v. United States*, 544 U.S. 13 (2005), the Supreme Court held this determination could be made about convictions following guilty pleas, and it expanded the list of permissible documents to include a "written plea agreement, transcript of [the] plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented." *Id.* at 26; *see also United States v. Barney*, 955 F.2d 635, 639 (10th Cir. 1992). We refer to these materials as *Shepard* documents.[14]

---

[14] We did not use the phrase "*Shepard* documents" until 2012. *See United States v. Cartwright*, 678 F.3d 907, 918 n.4 (2012). But this shorthand phrase is consistent with the background legal environment when Mr. Copeland was sentenced.

c.  *Use of a PSR to show elements of generic burglary*

Although a sentencing court in 2008 could use *Shepard* documents to find that a conviction for California burglary fit within the definition of generic burglary, was it permissible to rely instead on a PSR's description of the burglary offense?  The sparse case law at the time permitted a court to do so only when the PSR itself relied on *Shepard* documents.

In *United States v. Perez-Vargas*, 414 F.3d 1282, 1283 (10th Cir. 2005),[15] decided four months after *Shepard*, the defendant challenged his sentence on direct appeal, arguing the district court erred when it enhanced his Guidelines offense level based on finding that his Colorado assault conviction was a crime of violence.  *Id.* at 1283.  This court reversed, holding that the sentencing court's reliance on the PSR's description of the assault offense was insufficient.  *Id.* at 1285-87.  The description must be "supported by proof allowable under *Taylor* and *Shepard*."  *Id.* at 1285.  The appellate record lacked "the 'court documents' relied on by the PSR.  We thus [could not] evaluate whether the records would be acceptable under the strictures of Supreme Court precedent."  *Id.*

*Perez-Vargas* provided, therefore, that when Mr. Copeland was sentenced, a court could rely on a PSR's description of a prior crime to find it was an enumerated-clause offense, but only when the PSR was backed by "proof allowable under *Taylor* and *Shepard*."  *See id.*

---

[15] *Perez-Vargas* has been overruled on other grounds.  *United States v. Bettcher*, 911 F.3d 1040, 1041 n.1 (10th Cir. 2018).

The Government states that we can find relevant background law about reliance on PSRs in a passage from our 2018 decision in *United States v. Washington*: "[T]his court . . . upheld a district court's reliance on a PSR in enhancing a sentence under the ACCA where the PSR was based in part on court records and the defendant did not object to the PSR." 890 F.3d at 897 n.6. The court cited *United States v. Harris*, 447 F.3d 1300, 1305-06 (10th Cir. 2006), for this statement. *Harris*, however, was not directly on point to Mr. Copeland's sentencing because it upheld a district court's reliance on a PSR to determine whether prior ACCA predicate crimes were committed on different occasions, not whether they were violent felonies. *Id.* at 1305-06.[16]

*Perez-Vargas* appears to supply the most pertinent background legal authority on when a court in the Tenth Circuit in 2008 could rely on a PSR to make an ACCA enumeration-clause determination. But even under *Washington*'s take on *Harris*, a court would have needed more than a defendant's failure to object to a PSR's description of a prior offense. There must be some proof that the PSR relied on court records before its description could serve as the basis for an enumerated-clause offense finding.[17]

---

[16] Determining whether a conviction is a crime of violence or a violent felony requires "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions," *Perez-Vargas*, 414 F.3d at 1284, while determining whether prior convictions were committed on different occasions is a finding of fact similar to other factual determinations judges make in sentencing, *United States v. Michel*, 446 F.3d 1122, 1132-33 (10th Cir. 2006).

[17] Mr. Copeland urges us to consider *Descamps v. United States*, 570 U.S. 254 (2013), as part of the background legal environment, arguing it removed the modified

d. *California burglary and the residual clause*

In 2008, background law regarding California burglary and the residual clause was undeveloped in the Tenth Circuit. In our 2012 *Maldonado* decision, we said that "[t]his circuit has not yet determined whether California's first[-]degree burglary offense is a violent felony." 696 F.3d at 1098.[18] Although "[n]either the Supreme Court nor the Tenth Circuit ha[d] addressed whether [first-degree California burglary] is a violent felony under the residual clause" of the ACCA, *Maldonado*, 696 F.3d at 1099, we had held that second-degree California burglary was not a crime of violence under the residual clause of U.S.S.G. § 4B1.2(1)(ii), *United States v. Smith*, 10 F.3d 724, 733 (10th Cir. 1993) (per curiam),[19] which, as noted above, was worded identically to the ACCA residual clause. Mr. Copeland has not cited, and we have not found, case law from the Supreme Court, the Tenth Circuit, or other circuits

---

categorical approach from consideration of his prior burglary offense. We decline to do so because we must consider only the relevant background law in 2008 when Mr. Copeland was sentenced. *See Snyder*, 871 F.3d at 1129.

[18] We held that California first-degree burglary was a violent felony under the ACCA residual clause, a holding that would not be allowed after the Supreme Court's decision in *Johnson* that the ACCA residual clause is unconstitutionally vague.

[19] In *Smith* we acknowledged "[t]his view"—that second-degree burglary is not a crime of violence—"is diametrically opposed to the position taken by Congress" in the ACCA. 10 F.3d at 732. *Smith* interpreted Congress as "stat[ing] that *every* burglary *inherently* presents a serious potential risk of physical injury to another." *Id.*

This view later found support in *Leocal v. Ashcroft*, 543 U.S. 1 (2004): "A burglary would be covered under [the definition of crime of violence in 18 U.S.C.] § 16(b) . . . because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime." *Id.* at 10.

as of 2008 holding that a second-degree California burglary conviction could be an ACCA residual clause offense.[20]

Nonetheless, the Supreme Court's 1990 decision in *Taylor* kept the door open to finding second-degree California burglary to be a residual clause offense:

> Our present concern is only to determine what offenses should count as "burglaries" for enhancement purposes. The Government remains free to argue that any offense— including offenses similar to generic burglary—should count towards enhancement as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under § 924(e)(2)(B)(ii).

495 U.S. at 600 n.9.

### 3. The Sentencing Record and the Background Law

The sentencing record and the relevant background law stand in tension. The residual clause was not mentioned in the sentencing record. The enumerated clause and "generic burglary" were not explicitly mentioned, either. But the discussions at the change of plea hearing about obtaining the burglary conviction records and about the difference between the enumerated clauses in the ACCA and the Guidelines suggested the court was contemplating an enumerated-clause sentence. The description of the burglary offense in the PSR was consistent with generic burglary.

In 2017, when the district court denied the § 2255 motion, the judge read the 2008 transcript as evincing reliance on the enumerated clause. As discussed above, the

---

[20] Mr. Copeland did cite, however, *James v. United States*, 550 U.S. 192 (2007) (applying ACCA residual clause to Florida attempted burglary); and *United States v. Frias-Trujillo*, 9 F.3d 875 (10th Cir. 1993) (applying residual clause in 18 U.S.C. § 16(b) to Texas burglary).

sentencing record does not "reveal[] the sentencing court *unambiguously* relied on a clause other than the residual clause to enhance [Mr. Copeland's] sentence under the ACCA." *Driscoll*, 892 F.3d at 1132 n.2 (emphasis added). The court made no "clear pronouncement." *Lewis*, 904 F.3d at 871. Nonetheless, the record still points to the enumerated clause as the basis for enhancement.

By contrast, the relevant background law in 2008 permitted the court to rely on the enumerated clause only if *Shepard* documents or a PSR referring to them showed that the prior offense was generic burglary. But there were no *Shepard* documents in the record. Although the law regarding the use of *Shepard* documents was in its infancy, the few relevant Tenth Circuit cases as of 2008 provided that the PSR at least needed to state it relied on *Shepard* documents for its description of the offense to serve as the basis for a generic burglary finding. *See Perez-Vargas*, 414 F.3d at 1285.

The relevant background law in 2008 lacked a decision holding that second-degree California burglary qualified as a violent felony under the ACCA residual clause. *See Washington*, 890 F.3d at 897 (stating the movant "cites no authority indicating . . . second-degree burglary also qualified under the ACCA's residual clause"). But *Taylor* kept the door open to that possibility.

The *Driscoll* opinion's analysis of Mr. Driscoll's Nebraska burglary conviction is instructive. Although the sentencing court had the "information"—the charging document—underlying the conviction, that document did not show that Mr. Driscoll had "burglarized a 'building or structure' within the generic definition of burglary." 892 F.3d at 1134. The sentencing court could not have known whether he was prosecuted for

28

burglarizing a building and therefore "could not have relied on the enumerated offenses clause because that would have violated *Taylor*." *Id.* at 1135. Because the sentencing record was ambiguous "as to whether the sentencing court relied on the residual clause to enhance [Mr.] Driscoll's sentence," we concluded, based on the legal environment, that "the sentencing court must have relied on the residual clause, as any reliance on the enumerated offenses clause would have violated *Taylor*." *Id.*

As in *Driscoll*, the sentencing record here did not expressly mention the enumerated or the residual clauses. The court never used the words "enumerated clause" or "generic burglary." At the change of plea hearing, the court's colloquies with the lawyers and the probation officer indicated potential reliance on the enumerated clause— far from conclusive or unambiguous evidence. The hearing occurred three months before sentencing. In the intervening period, the court could have picked a different basis for its sentence based on research, information (or lack of information) about Mr. Copeland's prior conviction, or further reflection.

Although Mr. Copeland's sentencing record points more to the enumerated clause than the record did in *Driscoll*, *Driscoll*'s conclusion that the sentencing court "must have relied on the residual clause" due to the relevant background law, 892 F.3d at 1135, determines the outcome here. Notwithstanding clues from the change of plea hearing that the court was contemplating the enumerated clause, the applicable law allowed an ACCA sentencing enhancement for the burglary conviction only under the residual clause. The background law points more strongly toward the court's use of the residual clause than the sentencing record points toward

29

its use of the enumerated clause.[21]  It shows the sentencing court, with no *Shepard*

documents to find "generic burglary," could not have relied on the enumerated clause

but could have relied on the residual clause.  As a result, Mr. Copeland "has

adequately shown it is more likely than not that the sentencing court relied on the

residual clause to enhance his sentence."  *Id.*[22]

This conclusion has two consequences.  First, it means Mr. Copeland has satisfied

the requirements of 28 U.S.C. § 2255(h)(2) for a second or successive § 2255 motion by

showing that his claim relies on the "new rule of constitutional law" recognized in

---

[21] The combination of the sentencing record and the relevant background law in this case stops short of a circumstance where (1) a sentencing court unambiguously stated that it relied on the ACCA enumerated or elements clause to enhance the sentence, and (2) the relevant background law at the time of sentencing precluded reliance on the enumerated or elements clause but allowed reliance on the residual clause.

We said in *Driscoll* that we "might" not need to consider the background law when the sentencing court has unambiguously relied on a clause other than the residual clause.  *Driscoll*, 892 F.3d at 1132 n.2.  But we have not explained when and how we should consider the background law in that circumstance and when we should not.

If we do not consider the background law in this scenario, the movant has failed to show a *Johnson* error, even though, under the law at the time of sentencing, the only legally permissible way to enhance the sentence would have been to rely on the residual clause.  If we do consider the background law, would we say that the court could not have relied on the enumerated clause, even though the court said it did, and that the prisoner has shown a *Johnson* error?

Because this scenario does not describe our case, we do not attempt to resolve it. We mention it here, however, because we recognized the difficulty of this question while analyzing our case.

[22] We recently explained:  "If, on the other hand, the sentencing court would have been unable to rely on the enumerated-offenses clause or the elements clause at the time of sentencing because doing so would have violated then-controlling law, we may instead deduce that the sentencing court must have relied on the residual clause."  *United States v. Neely*, No. 17-8087, 2019 WL 761556, at *2 (10th Cir. Feb. 20, 2019) (unpublished) (quotations omitted).

*Johnson* that *Welch* "made retroactive to cases on collateral review."[23]  Second, it means

that the district court committed a *Johnson* error in 2008 when it based Mr. Copeland's

sentence on the now-unconstitutional residual clause.  We turn next to whether that error

was harmless.

4.  **Harmless Error Analysis**

Even when a sentencing court erred by relying on the ACCA's residual clause

to enhance a sentence, we will grant habeas relief only if the error "'had substantial

and injurious effect or influence in determining' his sentence."  *Driscoll*, 892 F.3d at

1135 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).  More precisely,

"[W]ould a sentencing judge, applying current law, determine that the movant's

conviction(s) still qualifies as a crime of violence under one or both of the still-valid

ACCA clauses and resentence him to the same length of imprisonment?"  *Lewis*, 904

F.3d at 873.  If the answer is yes, we consider the error harmless.  *Id.*  "The

government bears the burden of proof on this issue."  *Id.* at 872 (quoting *United

States v. Wilfong*, 733 F. App'x 920, 927 (10th Cir. 2018) (unpublished)).

Applying "current law" to the harmless error analysis, *id.* at 873, we turn to

*Descamps v. United States*, 570 U.S. 254 (2013).  In *Descamps*, the Supreme Court

said the California burglary statute does not list alternative elements, *id.* at 264, and

therefore "a conviction under that statute is never for generic burglary," *id.* at 277.

---

[23] This is contrary to the district court's conclusion that Mr. Copeland "has not asserted a claim for relief under *Johnson*," *Copeland*, 2017 WL 4819108, at *4, which we take to be the court's determination that Mr. Copeland could not pass the second gate for a second or successive § 2255 motion.

Accordingly, a conviction under the California burglary statute is not an ACCA predicate. It fails under the elements clause because it lacks "as an element the use, attempted use, or threatened use of physical force against the person of another," *compare* 18 U.S.C. § 924(e), *with* Cal. Penal Code § 459; fails under the enumerated clause after *Descamps*, *see* 570 U.S. at 264; and cannot qualify under the residual clause because that clause is "unconstitutionally vague," *Johnson*, 135 S. Ct. at 2557.

Mr. Copeland had only two ACCA predicate offenses in 2008—his two drug convictions. He lacks the required third ACCA predicate for an enhanced sentence because his California second-degree burglary does not qualify. He thus may not be sentenced, today, under the ACCA. The error in his 2008 sentence is therefore harmful.

## III. CONCLUSION

Because Mr. Copeland has shown the district court relied on the residual clause when it sentenced him in 2008 and that his successive § 2255 motion relies on *Johnson*, he has passed the second gate of § 2255(h)(2) review. He further has shown that he should prevail on the merits.

We therefore reverse the district court's dismissal of Mr. Copeland's § 2255 motion and remand with instructions to grant the motion to vacate, set aside the sentence, and resentence Mr. Copeland consistent with this opinion. In view of the potential consequence of this decision to Mr. Copeland's custodial status, the mandate shall issue forthwith to enable the district court to conduct further

32

proceedings on a prompt basis.  Should the Government wish to petition for panel or en banc rehearing, we will consider a motion to recall the mandate.