**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GREGORY LOZADO,

    Defendant - Appellant.

No. 19-1222

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. Nos. 1:16-CV-01304-PAB & 1:13-CR-00151-PAB-1)**
_____

Kathleen Shen, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant – Appellant.

Paul Farley, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff – Appellee.
_____

Before **LUCERO**, **McHUGH**, and **EID**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Defendant Gregory Lozado appeals the district court's denial of his 28 U.S.C.

§ 2255 motion to vacate his sentence. In his § 2255 motion, Mr. Lozado contended

that his sentence must be vacated based on the Supreme Court's decision in *Johnson*

*v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015). Specifically, he noted that his sentence had been enhanced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which applies when a defendant convicted under 18 U.S.C. § 922(g) "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In *Johnson*, the Court invalidated one part of the ACCA's definition of "violent felony," a catch-all provision referred to as the "residual clause." 135 S. Ct. at 2556–57, 2563. Mr. Lozado contended the *Johnson* ruling affected the violent-felony classification of at least three of the five prior convictions the district court had relied on at his sentencing. The district court denied his § 2255 motion, holding that *Johnson* affected the classification of two of his prior convictions but that the remaining three convictions were sufficient to sustain the enhancement.

We conclude that the sentencing court classified two of the prior convictions as violent felonies based on the now-invalidated residual clause and that a third conviction should not have been counted as a violent felony because it was a juvenile offense that did not involve a firearm, knife, or destructive device, *see* 18 U.S.C. § 924(e)(B). We further conclude that the government cannot show harmless error because none of these three convictions would qualify as a valid ACCA predicate if Mr. Lozado were sentenced under current law, and thus Mr. Lozado no longer has enough qualifying convictions to trigger the ACCA enhancement. *See* 18 U.S.C. § 924(e)(1). We accordingly reverse the district court's denial of § 2255 relief and remand for resentencing.

2

## I.  BACKGROUND

On November 20, 2013, a jury found Mr. Lozado guilty of possessing ammunition as a previously convicted felon in violation of 18 U.S.C. § 922(g). *See United States v. Lozado*, 776 F.3d 1119, 1123–24 (10th Cir. 2015). The Presentence Report ("PSR") prepared by the probation office in January 2014 recommended that he be sentenced as an armed career criminal under the ACCA based on five predicate violent-felony convictions, all from the state of Colorado: (1) a juvenile conviction for second-degree assault with a deadly weapon; and adult convictions for (2) robbery; (3) second-degree burglary of a building; (4) felony menacing; and (5) theft from a person. This increased the recommended offense level from 28 to 33. With Mr. Lozado's criminal-history level of VI, the advisory Guidelines range was thus raised from 140–175 months to 235–293 months. *See* U.S.S.G. Ch. 5, pt. A (2013) (sentencing table). More importantly, application of the ACCA changed the statutory *maximum* penalty of ten years for Mr. Lozado's offense to a statutory *minimum* penalty of fifteen years. *Compare* 18 U.S.C. § 924(a)(2), *with* § 924(e)(1).

At Mr. Lozado's March 12, 2014, sentencing hearing, the district court adopted the PSR with only a few non-substantive amendments. The district court then sentenced Mr. Lozado to 235 months of imprisonment, the bottom of the ACCA-enhanced advisory Guidelines range. A panel of this court affirmed Mr. Lozado's conviction in January 2015. *Lozado*, 776 F.3d at 1119, 1121.

In June 2015, the Supreme Court issued its decision in *Johnson*, invalidating the definition of "violent felony" contained in the ACCA's residual clause while

3

leaving in place the two other definitional clauses. 135 S. Ct. at 2551, 2563. This ruling was given retroactive effect in *Welch v. United States*, 577 U.S. __, 136 S. Ct. 1257, 1265–66 (2016).

Mr. Lozado filed a timely habeas challenge to his ACCA sentence on May 28, 2016, arguing that only one of the predicate ACCA offenses identified at sentencing—the conviction for felony menacing—still qualified as a violent felony after *Johnson*. As a result, Mr. Lozado claimed the sentencing court had improperly enhanced his sentence under the ACCA.

In opposing Mr. Lozado's § 2255 motion, the government conceded that theft from a person could not be considered a violent felony in light of *Johnson* but argued that the other four convictions still qualified as valid ACCA predicates. Based on later developments in the law, the government filed a supplemental response in which it "concede[d] that Colorado second-degree burglary is not equivalent to (enumerated) generic burglary, nor does it have physical force as an element; thus, it could have qualified as a predicate offense under the ACCA only via the now-invalid residual clause." R. vol. I at 135. The government, however, maintained that the three remaining prior convictions all qualified as ACCA predicate offenses.

The district court agreed with the government and denied the § 2255 motion. The court held that the convictions for burglary and theft from a person no longer qualified as ACCA predicates but that the remaining convictions for robbery, felony menacing, and assault still qualified as violent felonies under the ACCA and thus the enhancement still applied.

4

Mr. Lozado sought a certificate of appealability from this court, arguing that the district court erred in relying on the assault conviction as an ACCA predicate. Specifically, he contended that Colorado second-degree assault is not categorically a violent felony because a defendant can be convicted for causing mental injuries alone. Mr. Lozado conceded that the convictions for robbery and felony menacing still qualified as violent felonies, but he argued these were the only convictions that presently qualified as ACCA predicates. Because the ACCA sentencing enhancement requires at least three prior violent felonies, Mr. Lozado argued it did not apply. A judge of this court granted Mr. Lozado's motion for a certificate of appealability.

In its response brief, the government argued that both the assault conviction and the burglary conviction qualified as violent felonies under the ACCA at the time of sentencing (along with the robbery and felony-menacing convictions conceded by Mr. Lozado) and therefore that no *Johnson* error occurred. However, the government subsequently conceded the assault conviction should not have been counted as an ACCA predicate regardless of *Johnson* because it was a juvenile offense that did not meet the ACCA's stricter definition of "violent felony" in the juvenile context. *See* 18 U.S.C. § 924(e)(2)(B). The government also waived any objection to Mr. Lozado raising this argument for the first time in his reply brief. Thus, the only dispute that remains in this appeal is whether the Colorado burglary conviction could have been classified as a violent felony at the time of sentencing without reference to the now-invalidated residual clause.

## II. ANALYSIS

Under the ACCA, a "violent felony" is defined as:

any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(B). Accordingly, at the time of Mr. Lozado's sentencing, a prior conviction could qualify as a predicate violent felony under one of three clauses: the elements clause ("has as an element the use, attempted use, or threatened use of physical force against the person of another"), the enumerated-offenses clause ("is burglary, arson, or extortion, [or] involves use of explosives"), or the residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another"). *Id.* Shortly after Mr. Lozado's sentencing, however, the *Johnson* Court found the residual clause to be void for vagueness and thus called into question all ACCA sentences, like Mr. Lozado's, that might have been based on this clause. 135 S. Ct. at 2563.

This circuit employs a two-part analysis to determine whether a defendant is entitled to relief under *Johnson*. First, we "ask[], *as a matter of historical fact*, whether the sentencing court relied on the residual clause in imposing the ACCA sentence." *United States v. Lewis*, 904 F.3d 867, 872 (10th Cir. 2018) (quoting

6

*United States v. Wilfong*, 733 F. App'x 920, 927 (10th Cir. 2018)). This question is easy to resolve if the sentencing court specified which clause it relied on, but if the court did not so specify, then we must "examine[] the 'relevant background legal environment' at the time of sentencing to determine whether the district court would have needed to rely on the residual clause." *United States v. Driscoll*, 892 F.3d 1127, 1132 (10th Cir. 2018) (quoting *United States v. Snyder*, 871 F.3d 1122, 1130 (10th Cir. 2017)).Next, if we determine the district court relied on the now-invalidated residual clause, then we engage in a harmless-error analysis in which we ask "whether the classification of the movant as an armed career criminal is correct" under current law. *Lewis*, 904 F.3d at 872 (quoting *Wilfong*, 733 F. App'x at 927). We refer to current law at this stage of the analysis because we are now concerned with "the question of remedies and resentencing": "[W]ould a sentencing judge, applying current law, determine that the movant's conviction(s) still qualifies as a crime of violence under one or both of the still-valid ACCA clauses and re-sentence him to the same length of imprisonment?" *Id.* at 873. If so, then the *Johnson* error is harmless because the "movant would still receive an ACCA enhancement at resentencing." *Id.*

### A. *Classification of State Burglary Conviction as an ACCA Predicate*

#### 1. Preliminary Issues

Before we apply this analysis to Mr. Lozado's prior burglary conviction, we first briefly address two preliminary issues. First, the government acknowledges its concession below that the burglary conviction did not qualify as a valid ACCA

7

predicate offense, but it argues that, in light of subsequent developments in the law, it should not be held to this concession. "We are not bound to accept the government's concession on a point of law or on the existence of constitutional error." *United States v. Greer*, 881 F.3d 1241, 1245 n.3 (10th Cir. 2018) (internal quotation marks omitted). Because this area of the law has undergone a significant evolution in the four years since this case began, we find it appropriate not to hold the government to its concession, and we will therefore address this issue on the merits.[1]

Second, the parties dispute whether we must apply the first stage of the *Johnson* analysis to the burglary conviction before reaching the question of harmless error or whether we can instead find that the sentencing court's reliance on the residual clause with respect to any of the predicate convictions is sufficient to satisfy the first stage of *Johnson* and trigger harmless-error review for the other convictions. But we need not resolve this dispute because we would reach the same result under either approach: As explained below, Mr. Lozado has shown that the sentencing court relied on the residual clause in classifying the burglary conviction as a violent felony,

---

[1] The government's position on appeal also presents a question regarding the scope of the certificate of appealability previously issued by a judge of this court. Although the certificate of appealability stated broadly that it granted Mr. Lozado the right "to appeal the district court's decision," Order Granting Certificate of Appealability at 3, the accompanying order discussed only Mr. Lozado's challenge to the assault conviction. To the extent it might therefore be construed as limited to the assault conviction, we expand the scope of the certificate of appealability to include the parties' arguments respecting the other convictions relied on by the district court at sentencing. *Cf. United States v. Shipp*, 589 F.3d 1084, 1087–88 (10th Cir. 2009) (expanding scope of certificate of appealability to include issues relating to ACCA enhancement).

which is sufficient to satisfy the first stage of the *Johnson* analysis under either party's suggested approach.

## 2. Reliance on Residual Clause at Time of Sentencing

At sentencing, the district court did not specify which clause it relied on to classify Mr. Lozado's burglary conviction as a violent felony. We therefore look to the relevant legal backdrop at the time of his sentencing in March 2014 "to determine whether the district court would have needed to rely on the residual clause." *Driscoll*, 892 F.3d at 1132. Of the two other potential clauses, there is no dispute that the elements clause did not apply, because the state burglary statute does not have as an element the use of force. Accordingly, the key question before us in this appeal is whether the law in effect at the time of sentencing suggests that the district court likely relied on the enumerated-offenses clause rather than the residual clause.

Notably, although the enumerated-offenses clause lists "burglary" as one of the enumerated violent felonies, the Supreme Court established years ago that it is not enough for a defendant to be convicted of a crime that carries the statutory label of "burglary." In 1990, the Supreme Court held that "burglary" in the enumerated-offenses clause refers only to an offense that contains all of the elements of the modern, generic definition of burglary, including "unlawful or unprivileged entry into, or remaining in, a building or structure." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Where a state statute defines burglary more broadly than the generic offense—for instance, "by including places, such as automobiles and vending machines, other than buildings"—then a conviction under this statute can only satisfy

9

the enumerated-offenses clause if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 599, 602.

In 2005, the Supreme Court adapted this test to convictions based on guilty pleas and clarified what documents a sentencing court may consider in determining whether the defendant's guilty plea was based on the elements of generic burglary. *Shepard v. United States*, 544 U.S. 13, 16 (2005). The Court explained that the sentencing court may not look at police reports or victim complaints but is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* "According to the Supreme Court, then, we must limit ourselves to (1) an examination of the language of the statute under which [the defendant] was convicted, (2) the charging document or court records of comparable reliability, and (3) any admissions (including those within the plea agreement) [the defendant] made regarding the facts of his prior convictions." *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005), *abrogated on other grounds by United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017).

*a. Statutory Definition*

Mr. Lozado's burglary conviction was based on his February 2000 guilty plea to the class 4 felony of second-degree burglary of a building in violation of Colo. Rev. Stat. § 18-4-203. At the time he pleaded guilty to this offense, the statute provided:

10

(1) A person commits second degree burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property.

(2) Second degree burglary is a class 4 felony, but it is a class 3 felony if:

(a) It is a burglary of a dwelling . . . .

Colo. Rev. Stat. § 18-4-203 (1999). For purposes of this statute, "'[b]uilding' means a structure which has the capacity to contain, and is designed for the shelter of, man, animals, or property, and includes a ship, trailer, sleeping car, airplane, or other vehicle or place adapted for overnight accommodations of persons or animals, or for carrying on of business therein, whether or not a person or animal is actually present." Colo. Rev. Stat. § 18-4-101(1) (1999). Thus, while the class 3 felony of burglary of a "dwelling" might categorically qualify as a generic burglary offense, the statutory definition of the class 4 felony offense to which Mr. Lozado pleaded guilty is too broad to constitute generic burglary because it includes entry into vehicles. *See Taylor*, 495 U.S. at 599.

### b. *PSR Reference to Court Records*

The government concedes that the statutory definition of class 4 burglary is broader than generic burglary, but it argues the sentencing court could still have found that Mr. Lozado's guilty plea was based on all of the elements of generic burglary based on the information provided in the PSR. The government does not dispute that the record before the district court at the time of sentencing did not include any charging documents, written plea agreements, transcripts of plea

11

colloquies, or other *Shepard* documents pertaining to the burglary conviction. The government argues, however, that the sentencing court could have found Mr. Lozado's burglary offense involved a residence based on the PSR's assertions that (1) "[r]ecords received from Denver County District Court reveal that the defendant broke into the victim's residence, although he pled guilty to breaking into a 'building,'" and (2) Mr. Lozado was originally charged with the class 3 felony of burglary of a dwelling, although he only pled guilty to the class 4 felony of burglary of a "building."[2] R. vol. II at 54; *see also* R. vol. I at 121.

In our 2005 decision in *Perez-Vargas*, we addressed the question of when a sentencing court may rely on the PSR's description of a prior conviction in its enumerated-offenses analysis. 414 F.3d at 1285. In that case, as here, the government argued that the defendant's prior offense could be characterized as a violent felony based on the PSR's description of facts gleaned from unspecified "'court documents.'" *Id.* But because the court documents relied on by the PSR were neither included in the record nor identified in the PSR, we held that we could not "evaluate whether the records would be acceptable under the strictures of Supreme Court

---

[2] We are not persuaded that this second assertion would help the government's case even if it were properly supported by *Shepard* documents. At the time of Mr. Lozado's sentencing, the Supreme Court had already clarified that a sentencing court may review charging documents "only to determine 'which statutory phrase was the basis for conviction,'" not "to discover what the defendant actually did." *Descamps v. United States*, 570 U.S. 254, 268 (2013) (quoting *Johnson v. United States*, 559 U.S. 133, 144 (2010)). We do not see how the original charge could help the sentencing court determine "which statutory phrase was the basis for conviction," *id.* (internal quotation marks omitted), where, as here, the defendant ultimately pled guilty only to a lesser charge.

12

precedent." *Id.* And, because we could not determine whether the cited court documents would be allowable under *Shepard*, we refused to consider the PSR's description of facts obtained from these documents in deciding whether the offense qualified as a violent felony under the enumerated-offenses clause. *Id.*

The government argues that our decision in *Perez-Vargas* was modified or superseded by our decision in *United States v. Harris*, 447 F.3d 1300 (10th Cir. 2006). According to the government, *Harris* permitted sentencing courts to refer to unobjected-to assertions in the PSR even if the PSR's assertions were not clearly based on permissible *Shepard* documents. The government's argument is easily rejected, however, because we have already rejected this reading of *Harris* in this context.

Unlike *Perez-Vargas* and this case, *Harris* did not involve a dispute regarding the enumerated-offenses analysis. Rather, the defendant in that case argued the district court improperly relied on the PSR to determine that his offenses were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1). In rejecting this argument, we first noted that the defendant had admitted in his plea agreement to a criminal history spanning multiple decades. *Harris*, 447 F.3d at 1305. We further noted that "the record indicates that the court had before it some of the court records from [the defendant's] prior crimes": "At sentencing, for example, the government urged the court to rely on 'the judgment of convictions and the charging documents' to conclude that [the defendant's] crimes were separate incidents." *Id.* at 1306. Finally, we noted that the defendant had not objected to the PSR's description

13

of his crimes as separate. *Id.* Based on these facts, we determined both that "the court relied on [the defendant's] admissions as well as documents sanctioned by *Shepard* to conclude the prior crimes were committed on different occasions" and that "the district court could properly rely on the PSR to conclude that his prior crimes were separate." *Id.*

In *United States v. Copeland*, 921 F.3d 1233 (10th Cir. 2019), as in this case, the government attempted to rely on *Harris* in the enumerated-offenses context to uphold an ACCA sentence against a *Johnson* challenge. We concluded, however, that *Harris* "was not directly on point to [the defendant's] sentencing because it upheld a district court's reliance on a PSR to determine whether prior ACCA predicate crimes were committed on different occasions, not whether they were violent felonies."[3] *Id.* at 1248. We then held that *Perez-Vargas* was "the most pertinent background legal authority on when a court in the Tenth Circuit in 2008 could rely on a PSR to make an ACCA enumeration-clause determination." *Id.* at 1249. And, under *Perez-Vargas*, we concluded that a description of the offense in the PSR could not have served as the basis for an enumerated-offenses-clause finding where the PSR did not indicate that it was "backed by 'proof allowable under *Taylor* and *Shepard*,'" even if the defendant raised no objection to the PSR at sentencing. *Id.* at 1248 (quoting *Perez-*

---

[3] *Harris* is further distinguishable because the record in that case indicated the sentencing court had been provided with the permissible *Shepard* documents. 447 F.3d at 1306. Here, by contrast, the government does not dispute that the district court received no *Shepard* documents before sentencing.

14

*Vargas*, 414 F.3d at 1285). The government's contrary interpretation of *Harris* is thus foreclosed by our decision in *Copeland*.[4]

The other cases cited by the government are likewise unhelpful. The Ninth Circuit's decision in *United States v. Gonzalez-Aparicio*, 663 F.3d 419 (9th Cir. 2011), cannot displace this court's own precedential decision in *Perez-Vargas*. And the Tenth Circuit cases cited by the government are easily distinguishable. In the government's cited cases, either the PSR was explicitly based on permissible *Shepard* documents, *see, e.g.*, *United States v. Washington*, 890 F.3d 891, 897 n.6 (10th Cir. 2018) ("[T]he relevant part of Defendant's PSR was based on the Information."), or the sentencing court considered *Shepard* documents as well as the PSR, *see, e.g.*, *United States v. Neely*, 763 F. App'x 770, 779 (10th Cir. 2019) ("Neely doesn't dispute that, with a quick glance at either the PSR or the charging document, the sentencing court would have been able to discern that the completed burglary Neely

---

[4] The government points to our statement in *Copeland* that "[t]here must be some proof that the PSR relied on court records before its description could serve as the basis for an enumerated-clause offense finding." 921 F.3d at 1249. According to the government, this language teaches that a PSR's citation to unidentified "court records" is sufficient for the sentencing court to rely on the PSR's description of the offense. But, read in context, *Copeland* does not question or modify *Perez-Vargas*'s clear holding that a PSR's description of an offense may sustain an enumerated-offenses-clause finding only when it is based on a specific subset of "court records"—the types of court records allowed by *Shepard*. *See, e.g.*, *id.* at 1248 (explaining that the sentencing court could rely on the PSR's description of the offense "only when the PSR itself relied on *Shepard* documents," meaning "the indictment or information and jury instructions" plus the "'written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented'" (brackets omitted) (quoting *Shepard*, 544 U.S. at 26)).

15

was convicted of committing meets the definition of burglary the Supreme Court set forth in *Taylor*." (internal quotation marks and brackets omitted)). These cases are thus readily distinguishable from *Perez-Vargas* and this case.

Under this circuit's precedent, underlying court documents may properly be considered where they are either adequately described or provided to the sentencing court, such that their compliance with *Shepard* can be confirmed. Where the documents are neither described nor provided to the sentencing court, however, then we cannot determine whether "the PSR was backed by 'proof allowable under *Taylor* and *Shepard*,'" *Copeland*, 921 F.3d at 1248 (quoting *Perez-Vargas*, 414 F.3d at 1285). In such cases, the PSR's description of the offense cannot sustain an enumerated-offenses-clause finding.

Applying this test here, the sentencing court could not have relied on the PSR's description of Mr. Lozado's burglary conviction because this description was based on unidentified "[r]ecords received from Denver County District Court." R. vol. II at 54. Like the unidentified "'court documents'" relied on in *Perez-Vargas*, 414 F.3d at 1285, these records could not be assessed for compliance with *Shepard*.

In sum, Colorado class 4 felony burglary is broader than generic burglary as defined in *Taylor*, and *Perez-Vargas* precluded the sentencing court from considering the PSR's description of the offense to determine whether Mr. Lozado's conviction was based on the elements of generic burglary.[5] The sentencing court accordingly

---

[5] The government also argues the sentencing court could have relied on Mr. Lozado's statement at sentencing that he "ran into somebody's house" on some

16

"could not have relied on the enumerated offenses clause because that would have violated *Taylor*." *Driscoll*, 892 F.3d at 1135. Rather, "[t]o impose the ACCA enhancement, its only option was the residual clause." *Id.* Mr. Lozado has therefore met his burden of demonstrating "that the sentencing court must have relied on the residual clause," satisfying the first stage of the *Johnson* analysis. *Id.*

### 3. Classification of Burglary Conviction as ACCA Predicate under Current Law

Turning to the second stage of the *Johnson* analysis, the government concedes that the burglary conviction is not a valid ACCA predicate under current law. Specifically, under the Supreme Court's analysis in *Mathis v. United States*, 136 S. Ct. 2243 (2016), the modified categorical approach permits a sentencing court to look to court documents only where a statute sets forth elements of different, divisible offenses. Where a statute simply sets forth alternate means of committing a single offense—such as alternate locations where a burglary may be committed—

---

unspecified occasion, R. vol. III at 41, as evidence that he pleaded guilty to second-degree burglary in February 2000 for conduct that included as an element the unlawful entry into a dwelling. *Cf. Shepard*, 544 U.S. at 26 (noting that the modified categorical approach permits sentencing courts to look at certain records "to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense"). Even assuming the sentencing court could consider statements made at sentencing as part of its assessment of the elements of a prior offense—a very dubious proposition under the Supreme Court's restrictive holdings in *Taylor* and *Shepard*—the vague statement the government relies on here simply could not support a finding that Mr. Lozado's plea of guilty "necessarily admitted elements of the generic offense" of burglary. *Id.* Thus, this statement does not affect Mr. Lozado's showing that "the sentencing court, more likely than not, relied on the residual clause to enhance his sentence." *Driscoll*, 892 F.3d at 1135.

17

then the statute is categorically not a crime of violence, regardless of the facts of the individual crime. *Id.* at 2256–57. Thus, "applying current law," a sentencing court could not conclude that this conviction "still qualifies as a crime of violence under one or both of the still-valid ACCA clauses." *Lewis*, 904 F.3d at 873.

## B. Other Potential ACCA Predicates

The government further concedes, and we agree, that Mr. Lozado's ACCA enhancement cannot be sustained on the basis of either his theft-from-a-person conviction or his juvenile assault conviction. The theft-from-a-person offense could have been classified as an ACCA predicate only based on the now-invalidated residual clause, and thus it cannot sustain the enhancement in light of *Johnson*. *See United States v. Neal*, 505 F. App'x 755, 756–57 (10th Cir. 2012) (holding, pre-*Johnson*, that Colorado theft-from-a-person offense constituted violent felony under residual clause but would not qualify as violent felony under either of the other two definitional clauses). As for the juvenile assault offense, a juvenile offense can be classified as a violent felony under the ACCA only if it "involv[es] the use or carrying of a firearm, knife, or destructive device." 18 U.S.C. § 924(e)(2)(B); *see also* 18 U.S.C. § 921(a)(4) (defining "destructive device" to refer to explosive, incendiary, and poison-gas-based weapons). Not only was Mr. Lozado's juvenile assault offense based on a statute that covers a much wider swath of conduct than § 924(e)(2)(B), *see* Colo. Rev. Stat. § 18-3-203(1)(b) (1997) (defining second-degree assault as intentionally causing injury "by means of a deadly weapon"); *People v. Saleh*, 45 P.3d 1272, 1273 (Colo. 2002) ("Any object, including a foot, may be a

18

deadly weapon depending upon the manner in which it was used."), but his crime involved only the use of "glass bottles," R. vol. II at 51, and none of the weapons listed in § 924(e)(2)(B).

It is true that this specific challenge to the juvenile assault conviction was not raised in the district court or in Mr. Lozado's opening brief and that we generally will not consider arguments raised for the first time in a reply brief. *See United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012). However, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 US. 106, 121 (1976). We exercise our discretion to consider this argument on appeal based both on the government's concession and on our conclusion that the district court's reliance on this conviction to sustain the ACCA enhancement was plainly erroneous.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (internal quotation marks omitted). Because Mr. Lozado's prior juvenile offense clearly does not fall within the plain language of the ACCA, he has shown that the district court committed an error that was plain or obvious under existing law when it relied on this conviction to sustain the ACCA enhancement, thus satisfying the first two prongs of the plain-error analysis. Mr. Lozado has also satisfied the third prong of the plain-error analysis because the

court's erroneous reliance on this conviction as an ACCA predicate subjected him to a sentence that is 115 months longer than the statutory maximum that would otherwise apply, clearly implicating his substantial rights. *See* 18 U.S.C. § 924(a)(2); s*ee also Gonzalez-Huerta*, 403 F.3d at 732 (10th Cir. 2005) ("Satisfying the third prong of plain-error review—that the error affects substantial rights—'usually means that the error must have affected the outcome of the district court proceedings.'" (quoting *United States v. Cotton*, 535 U.S. 625, 632 (2002))). Finally, the Supreme Court has held that even less drastic sentencing errors are sufficient to satisfy the fourth prong of the plain-error analysis. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906–09 (2018). As the Court reasoned in *Rosales-Mireles*, "'[W]hat reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?'" *Id.* at 1908 (quoting *United States v. Sabillon-Umana*, 772 F.3d 328, 1333–34 (10th Cir. 2014) (Gorsuch, J.)). We thus exercise our discretion to consider this belatedly raised argument and hold that Mr. Lozado's ACCA enhancement cannot be sustained on the basis of his juvenile assault conviction.

## III. CONCLUSION

Mr. Lozado's burglary conviction could only have been classified as a violent felony based on the now-invalidated residual clause. His theft-from-a-person conviction was likewise based on the residual clause, and his juvenile assault conviction does not qualify as a violent felony under the ACCA. Mr. Lozado is

20

therefore left with only two prior convictions that could possibly qualify as ACCA predicates. Because application of the ACCA requires at least three prior violent-felony offenses, *see* 18 U.S.C. § 924(e)(1), Mr. Lozado is entitled to relief under 28 U.S.C. § 2255. We accordingly **REVERSE** the district court's denial of his § 2255 motion and **REMAND** for resentencing in accordance with this opinion.