FILED
United States Court of Appeals
Tenth Circuit

April 1, 2021

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

THOMAS R. RODELLA,

    Defendant - Appellant.

No. 20-2020
(D.C. Nos. 1:19-CV-00275-JB-CG &
1:14-CR-02783-JB-CG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.
_____

Thomas R. Rodella, the former sheriff of Rio Arriba County, New Mexico, was

convicted and sentenced to 121 months in prison for using unreasonable force during an

unlawful arrest, a violation of 18 U.S.C. § 242, and for using a firearm during a crime of

violence, a violation of 18 U.S.C. § 924(c). He now appeals from a district court order

that denied his 28 U.S.C. § 2255 motion for sentencing relief. We affirm the district

court's order insofar as it addresses the burden of proof required to show a sentence was

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

based on § 924(c)'s invalidated residual clause. We deny a certificate of appealability (COA) and dismiss this matter to the extent the district court determined that Rodella did not show he was sentenced under that clause.

## BACKGROUND
### I. The Crime, Trial, and Appeal

On an evening in March 2014, Rodella was a passenger in a Jeep driven by his son. The two men became involved in an altercation with Michael Tafoya, the driver of another vehicle. They pursued Tafoya and eventually caught him when his vehicle "became stuck on [a] metal pole." *United States v. Rodella*, 804 F.3d 1317, 1322 (10th Cir. 2015).

Rodella jumped into Tafoya's front passenger seat, armed with a .38 caliber revolver. Tafoya grabbed at Rodella's wrists, pleading with him, "Please don't kill me." *Id.* (internal quotation marks omitted). "Rodella kept trying to turn the gun towards Tafoya." *Id.*

Rodella's son opened the driver's side door of Tafoya's vehicle and pulled him out, "thr[owing] him facedown on the ground." *Id.* He "told Tafoya to stop struggling and then said to Tafoya, 'Don't you realize he's the sheriff?'" *Id.*

Tafoya asked to "see Rodella's badge in order to confirm that he was the sheriff." *Id.* Rodella asked, "You want to see my badge?" *Id.* (internal quotation marks omitted). He "then approached Tafoya while he was still [lying] face down on the ground, grabbed the back of Tafoya's hair, and slapped Tafoya across the right cheek with his sheriff's badge while saying, 'Here's my badge, motherfucker.'" *Id.* Rodella then "stuff[ed] it in

2

Tafoya's right eye and slamm[ed] Tafoya's head into the ground." *Id.* (internal quotation marks omitted).

Sheriff's deputies arrived and eventually transported Tafoya to the county jail. "Upon his release from jail, Tafoya contacted the Federal Bureau of Investigation (FBI) and reported what had happened to him." *Id.*

A federal grand jury indicted Rodella for depriving Tafoya of his "constitutional right to be free of unreasonable force and seizure, in violation of 18 U.S.C. § 242," and for using "a dangerous weapon in connection with that offense, in violation of 18 U.S.C. § 924(c)(1)(A)(ii)." *Id.* at 1323. A jury found Rodella guilty on both counts and he was sentenced in February 2015 to 121-months' imprisonment. This court affirmed Rodella's conviction. *See id.* at 1338.

## II. The § 2255 Case in the District Court

Rodella then filed in the district court a § 2255 motion, arguing, among other things, that his § 924(c) sentence was based on that statute's residual clause, which the Supreme Court invalidated as unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).[1] The district court disagreed, ruling that although the

---

[1] The residual clause resides next to the elements clause in § 924(c)(3), which defines a "crime of violence" as a felony and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another [the Elements Clause], or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [the Residual Clause].

record was silent as to whether Rodella was sentenced under the residual clause or the elements clause, Rodella did not show that the court had more likely than not relied on the residual clause. The district court reasoned that the law at both the time of sentencing and the time of the § 2255 motion indicated that § 242 was a divisible statute, permitting consideration of court records showing that Rodella had used a gun to threaten the use of violent force, consistent with an elements-clause sentence.

### III. The District Court's Grant of a COA

Rodella sought a COA, "a jurisdictional prerequisite to an appeal from the denial of an issue raised in a § 2255 motion," *United States v. Gonzalez*, 596 F.3d 1228, 1241 (10th Cir. 2010). To obtain a COA, the applicant must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which means, for claims denied on the merits, that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The district court concluded that "jurists of reason would not disagree with its resolution of Rodella's constitutional claims because 'use' of a firearm is sufficient to render an offense a crime of violence under current law and under the law at the time of Rodella's sentencing." Aplt. App. at 108; *see also id.* at 111-12. But the district court "acknowledge[d] that Rodella would have a much stronger case if the [c]ourt applie[d]

18 U.S.C. § 924(c)(3). *Davis*'s invalidation of the residual clause "has retroactive effect in cases on collateral review." *United States v. Bowen*, 936 F.3d 1091, 1101 (10th Cir. 2019) (internal quotation marks omitted).

4

the might-have-relied-on standard" used by other circuits, rather than the Tenth Circuit's "preponderance-of-the-evidence standard." *Id.* at 117. This acknowledgement led the court to grant a COA—albeit reluctantly—reasoning that it was justified "because there is a [Circuit] split on a [§ 2255 movant's] burden of proof when arguing that the sentencing court relied upon an unconstitutional provision during sentencing." *Id.*; *compare United States v. Driscoll*, 892 F.3d 1127, 1135 (10th Cir. 2018) (holding that "at the merits stage of a first § 2255 challenge," the movant "must prove that the sentencing court, more likely than not, relied on the residual clause to enhance his sentence"), *with United States v. Peppers*, 899 F.3d 211, 224 (3d Cir. 2018) (stating that a § 2255 "movant must . . . show that *it is possible* he was sentenced under the now-unconstitutional residual clause" (emphasis added)).

The district court's reluctance in granting a COA on the burden-of-proof issue stemmed from its view that, in deciding whether to grant a COA, the focus should be on whether the court's "assessment of the constitutional claims," *Slack*, 529 U.S. at 484, is debatable—not whether the legal issue itself is debatable. *See* Aplt. App. at 117. In other words, the district court said, the determinative factor for issuing a COA is the debatability of the district court's conclusion based on its application of the law. *Id.* (citing *Hancock v. Trammell*, 798 F.3d 1002, 1026 (10th Cir. 2015)). And the law in the Tenth Circuit on the applicable burden of proof, the district court reiterated, is *Driscoll*'s preponderance standard.[2]

---

[2] The district court's reasoning finds some support in a decision of the Eleventh Circuit, which succinctly stated that "reasonable jurists would follow

Nevertheless, the district court felt obligated to grant a COA because of the holding of a panel of our court in an unpublished decision, *United States v. Crooks*, 769 F. App'x 569 (10th Cir. 2019). In *Crooks*, the panel held that "'[e]ven if a question is well settled in our circuit, the [issue] is debatable if another circuit has issued a conflicting ruling.'" *Id.* at 572 (quoting *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006)). Though the district court voiced its disagreement with this holding, it noted that it "faithfully will follow the Tenth Circuit's decisions," and, as the court understood its duty, that meant that it must follow *Crooks*'s "lead." Aplt. App. at 117.

## DISCUSSION
### I. The Burden of Proof

We summarily dispose of the issue on which the district court granted a COA. This appeal in effect asks us to revisit and overrule our decision in *Driscoll*, which established that the operative burden of proof is a preponderance of the evidence, *see Driscoll,* 892 F.3d at 1135. However, *Driscoll* is controlling precedent, and it is well settled that we are not authorized to overrule such precedent absent clear guidance authorizing such action from the Supreme Court or our en banc court. *See Barnes v. United States*, 776 F.3d 1134, 1147 (10th Cir. 2015). To those bodies, Rodella must seek recourse, if at all. Therefore, we uphold the district court's ruling and affirm its judgment on this burden-of-proof issue.

---

controlling law," *Lambrix v. Sec'y, Fla. Dep't of Corrs.*, 851 F.3d 1158, 1171 (11th Cir. 2017).

6

## II. Reliance on the Residual Clause

Notably, Rodella's arguments on appeal extend beyond the issue on which the district court granted a COA. Indeed, the bulk of his arguments concern the constitutional question of whether his § 924(c) sentence was based on that statute's invalidated residual clause. Yet, he does not expressly ask for an additional grant of a COA. The government, however, does not object to his arguments on the ground that they exceed the bounds of the granted COA; instead, it fully engages with them. At least under these circumstances, we exercise our discretion to construe Rodella's notice of appeal and opening brief as a request for a COA on the constitutional issue. *See United States v. Hong*, 671 F.3d 1147, 1148 (10th Cir. 2011). Doing so, we deny Rodella's request for a COA and dismiss that portion of this matter for the reasons that follow.

Where, as here, the record is silent as to whether a sentencing court relied on an invalidated residual clause, a court must examine "the relevant background legal environment at the time of sentencing to determine whether the district court would have needed to rely on the residual clause," given the option of the elements clause. *United States v. Copeland*, 921 F.3d 1233, 1242 (10th Cir. 2019) (internal quotation marks omitted). "[O]ur analysis never progresses beyond th[is] initial, historical evaluation of the sentencing court's decision," *United States v. Lewis*, 904 F.3d 867, 873 (10th Cir. 2018), unless the movant shows that the sentencing "court would have needed to rely on

7

the residual clause," *United States v. Lozado*, 968 F.3d 1145, 1149 (10th Cir. 2020) (internal quotation marks omitted).[3]

When Rodella was sentenced in February 2015, a court would have applied the "categorical approach" to determine whether 18 U.S.C. § 242 qualified as a violent crime under the elements clause. *See United States v. Trent*, 767 F.3d 1046, 1051-52 (10th Cir. 2014), *abrogated by Mathis v. United States*, 136 S. Ct. 2243, 2251 n.1 (2016). Under that approach, "a conviction qualifies only if all violations of the statute would qualify, regardless of how the specific offender might have committed it on a particular occasion." *Id.* at 1052 (brackets and internal quotation marks omitted). But if the statute of conviction was divisible, meaning that "it set[ ] out one or more elements of the offense in the alternative," then the court would have engaged in the modified categorical approach, "examin[ing] certain definitive underlying documents to determine which alternative the defendant's conviction satisfied." *Id.* (internal quotation marks omitted).[4]

---

[3] But "if we determine the district court relied on the now-invalidated residual clause, then we engage in a harmless-error analysis in which we ask whether the [sentencing enhancement] is correct under current law." *Lozado*, 968 F.3d at 1149 (internal quotation marks omitted).

[4] When Rodella was sentenced, we were not concerned with whether the statute's alternative "terms described different *means* of committing a single crime or different *elements* delineating separate crimes." *United States v. Titties*, 852 F.3d 1257, 1262 (10th Cir. 2017) (emphases added). That changed in 2016, when "the Supreme Court held in *Mathis* that the distinction between means and elements is important and that the modified categorical approach is available only when a statute lists alternative elements." *Id.* at 1262-63.

Relying on *Trent*, the district court here found that § 242 is divisible because it "has three separate clauses carrying three separate offenses that can be further parsed into alternative terms."[5] Aplt. App. at 73. The district court then consulted the verdict forms and jury instructions, determining that Rodella was subject to § 242's dangerous-weapon provision, which prescribes a sentence up to ten years if the "acts [committed to deprive a person of a right] include the use . . . or threatened use of a dangerous weapon." 18 U.S.C. § 242 (Second Clause).[6] In comparison, the Elements Clause provides that a

---

[5] The three clauses of § 242, broken apart for clarity, are as follows:

[First Clause] Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both;

[Second Clause] and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both;

[Third Clause] and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242.

[6] The district court observed that Rodella was also charged under the "bodily injury" provision of 18 U.S.C. § 242 (Second Clause). The jury did not, however, rely on that alternative, agreeing instead beyond a reasonable doubt that Rodella had "used or threatened to use a dangerous weapon." Aplt. App. at 27.

conviction is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3)(A), which means "violent force," *see Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010).

To ascertain whether § 242's dangerous-weapon provision "swe[pt] more broadly" than § 924(c)(3)'s Elements Clause, thus not "count[ing] as a[ ] . . . predicate" offense, or whether it either matched that clause or "define[d] the crime more narrowly," thereby qualifying as a predicate offense, *Descamps v. United States*, 570 U.S. 254, 261 (2013), the district court relied on *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010), *abrogated in part by Mathis*, 136 S. Ct. at 2253-54. Rodella's disagreement with the district court's analysis begins here.

In *Ramon Silva*, we held that "[t]hreatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of violent force" under the Elements Clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e). 608 F.3d at 670 (internal quotation marks omitted). We noted that this type of conduct threatens the use of violent force in two different ways: (1) "[t]he conduct could always lead to substantial and violent contact, and thus it would always include as an element the threatened use of violent force"; and (2) "the conduct could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force." *Id.* at 672 (ellipsis and internal quotation mark omitted).

The district court found *Ramon Silva* instructive, so it determined that because "any use of a dangerous weapon under 18 U.S.C. § 242 also threatens the use of violent

10

force," a conviction under § 242's dangerous-weapon provision is a § 924(c)(3) Elements Clause predicate offense. Aplt. App. at 75.

Rodella argues that *Ramon Silva* was not controlling law because it "focused on the element of touching the victim and required more than the display of dexterity handling a weapon," whereas § 242 does not require touching the victim. Aplt. Opening Br. at 17 (alterations and internal quotation marks omitted). We conclude that reasonable jurists would not debate the district court's reliance on *Ramon Silva*.

First, Rodella mischaracterizes *Ramon Silva*. In that case, we considered whether a conviction under an "'apprehension-causing' aggravated assault" statute qualified as a violent felony, and we took guidance from cases that "analyzed aggravated battery statutes that criminalized intentional physical contact with a deadly weapon." 608 F.3d at 672. We found those cases persuasive *despite* the differences in physical contact. *Id.* We explained that apprehension-causing assault "creates a commensurate threat of physical force" that could either "always lead to substantial and violent contact" or "at least put the victim on notice of the possibility that the weapon will be used more harshly in the future." *Id.* (ellipsis and internal quotation marks omitted). And although we said that there must be "more than the display of dexterity in handling a weapon," we noted that a purposeful threat or menacing conduct "*toward* a victim" would suffice. *Id.* at 674 (emphasis in original). In short, we agree with the district court that *Ramon Silva* is instructive, given that § 242, as relevant here, involves a willful deprivation of rights that includes the use or threatened use of a dangerous weapon against a victim.

11

Nevertheless, Rodella contends that the word "use" in § 242 somehow indicates that the offense can be committed merely by possessing a weapon, without any threat of violent force. The district court rejected this argument, finding that "use" connotes active employment of a firearm. Indeed, the common definition of "use" is "[t]o employ for the accomplishment of a purpose." *Use, Black's Law Dictionary* (11th ed. 2019). Further, the § 924(c) jury instructions in this case explained that a defendant "'uses' a firearm when it (1) is readily accessible and (2) is *actively employed during and in relation to the underlying crime*." Aplee. Supp. App. at 26 (emphasis added). And § 242's plain terms require, as relevant here, that the "acts" involving the deprivation of rights "include the use . . . or threatened use of a dangerous weapon." 18 U.S.C. § 242. Mere possession of a dangerous weapon is not consistent with the common definition of "use," the jury instructions in this case, or § 242's language.

Moreover, in an effort to advance his cause, Rodella relies on two unpublished Tenth Circuit decisions. We put aside the obvious fact that these decisions would not have been binding on the district court at the time of Rodella's sentencing. Instead, it suffices for us to note that Rodella fails to demonstrate that the district court would have found either decision to be a persuasive guidepost at the time of his sentencing. First, Rodella argues that the district court should not have relied on *Ramon Silva* because there was a more relevant case, *United States v. Verbickas*, 75 F. App'x 705 (10th Cir. 2003) (per curiam). There, correctional officers were convicted of violating § 242 by depriving inmates of their constitutional rights in a manner that resulted in bodily injury. This court concluded that a § 242 bodily-injury conviction qualified as a "crime of violence" under

12

the Mandatory Detention Act's Residual Clause because there was "'a substantial risk that physical force . . . [was] used in the course of committing the offense.'" *Id.* at 707 (quoting 18 U.S.C. § 3156(a)(4)(B)). Rodella fails to explain, though, how *Verbickas* has any bearing on whether his § 242 use-or-threatened-use-of-a-dangerous-weapon conviction could have served as a § 924(c) Elements Clause predicate. *Verbickas* involved a different predicate offense than the one involved here and would not have prevented the district court from sentencing Rodella under the Elements Clause.

And, second, Rodella contends that the government should be barred from claiming that his § 242 conviction could have served as a § 924(c) Elements Clause predicate. He points out that the government conceded in *United States v. Ryle*, 778 F. App'x 598, 600 (10th Cir. 2019) (per curiam), that Ryle's § 242 conviction was used as a § 924(c)(3) Residual Clause predicate. Ryle's conviction was based on the "kidnapping or an attempt to kidnap" provision in § 242's third clause, *see supra* note 5, and the government regularly concedes that kidnapping does not have a physical-force component. *See* Aplt. App. at 47. The district court rejected Rodella's assertion of a bar, explaining that because "§ 242 is a divisible statute, the United States can take a position that one offense under the statute is a crime of violence under the elements clause and another offense is a crime of violence under the residual clause." Aplt. App. at 80. We conclude that reasonable jurists would not debate the district court's ruling. Although Rodella maintains that "[t]he only difference between the cases is the *means* in which 'deprivation of rights' was violated," Aplt. Opening Br. at 19 (emphasis added), we reiterate that at the time of Rodella's sentencing, a statute containing alternative terms

13

was considered divisible "regardless of whether those terms described different means of committing a single crime or different elements delineating separate crimes," *United States v. Titties*, 852 F.3d 1257, 1262 (10th Cir. 2017) (describing the law in this Circuit before 2016).

We conclude that reasonable jurists would not debate whether the district court more likely than not relied on the residual clause in classifying his § 242 offense as a § 924(c) crime of violence.

## CONCLUSION

We affirm the district court's denial of § 2255 relief to the extent the court granted a COA on the requisite burden of proof. We deny a COA and dismiss this matter to the extent Rodella contends he was sentenced under § 924(c)'s residual clause.

Entered for the Court

Jerome A. Holmes
Circuit Judge